[629 NYS2d 316]

In the Matter of ROBERT L. SCHULZ, Appellant, v SHELDON SILVER et al., Individually and as Members of the Assembly of the State of New York, et al., Respondents.

Third Department, July 13, 1995

## APPEARANCES OF COUNSEL

*Robert L. Schulz,* Queensbury, appellant *pro se.*

*Dennis C. Vacco, Attorney-General,* Albany *(Daniel Smirlock, Victoria A. Graffeo* and *Peter H. Schiff* of counsel), for respondents.

## OPINION OF THE COURT

CREW III, J.

This litigation has its genesis in the recurring failure of the Legislature to adopt a budget on or before April 1, the commencement of the State's fiscal year *(see,* State Finance Law § 3 [1]). Apparently in anticipation of such a recurrence, petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action on March 31, 1995 seeking a judgment directing respondents, in their capacity as majority members of the State Assembly and State Senate, to, *inter alia,* act upon one full set of budget appropriation bills submitted by respondent Governor and declaring that absent passage of same and an emergency situation in the State, all expenditures of State funds subsequent to April 1, 1995 are unconstitutional. Petitioner also sought an order restraining,

*inter alia,* respondent Comptroller from issuing paychecks to State employees. Supreme Court ordered a hearing, following which a preliminary injunction was denied. Respondents moved to dismiss the petition/complaint on the grounds that the case is nonjusticiable, that petitioner lacks standing and that the complaint fails to state a cause of action, which motion was, in all respects, granted. Petitioner appeals from the order denying his motion for a preliminary injunction and from the judgment dismissing the petition/complaint.*

■ To the extent that the petition/complaint seeks relief for the failure of the Legislature to enact a State budget by April 1, 1995, we deem the case to be nonjusticiable. A justiciable controversy is one solvable by a court rather than some other forum and, with regard to the separation of powers doctrine, it has to do with whether a matter is resolvable by the judicial branch of government by way of interpreting or enforcing a statutory mandate or by the executive and/or legislative branches in the exercise of their purely political function *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3001:4, at 434). The question here, therefore, distills to whether the NY Constitution establishes a specific standard which the Legislature must meet or whether it leaves the matter in question to the judgment of the Legislature. In the former instance the judiciary may compel compliance with the constitutional mandate, while in the latter instance the matter is beyond judicial review *(see, Matter of King v Cuomo,* 81 NY2d 247, 251; *Jiggetts v Grinker,* 75 NY2d 411, 415).

The NY Constitution mandates that the Governor, on or before the first day of February in each year following a gubernatorial election, "submit to the [L]egislature a budget containing a complete plan of expenditures proposed to be made before the close of the ensuing fiscal year and all moneys and revenues estimated to be available therefor" (NY Const, art VII, § 2). To be submitted with the budget are bills containing the proposed appropriations included in that budget (NY Const, art VII, § 3). Finally, the Legislature is prohibited from considering any other appropriation bill until all of the bills submitted by the Governor have been finally acted upon (NY Const, art VII, § 5).

---

* To the extent that it could be asserted that the passage of the State budget has rendered this matter moot, we find, under the circumstances present here, that an exception to the mootness doctrine would lie *(see, Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715).

While the NY Constitution prescribes a specific time within which the Governor must submit his or her budget and budget bills to the Legislature, it is silent as to when the Governor's budget bills must be acted upon. So while the framers of the NY Constitution have mandated that the Legislature review the proposed budget and approve or disapprove the various expenditures proposed by the Governor, they have established no specific time frame in which to accomplish that task. In approving or disapproving the Governor's proposed expenditures, the Legislature is faced with the ordering of socioeconomic priorities which clearly are matters of discretionary judgment constituting a function of the political process and, as such, are not the subject of judicial review *(see, Saxton v Carey,* 44 NY2d 545). Moreover, petitioner is not entitled to a writ compelling respondents to act upon a budget because their roles in the budget process clearly are not ministerial. As heretofore noted, they require the exercise of considerable judgment and discretion *(see, Klostermann v Cuomo,* 61 NY2d 525, 539).

■ We come next to petitioner's assertion that absent passage of a budget and an emergency situation, any appropriations or expenditures by respondents after April 1, 1995 are unconstitutional. Initially, we reject respondents' assertion that petitioner lacks standing to assert this claim. State Finance Law § 123-b (1) confers standing upon any citizen taxpayer to maintain an action against a State officer who "has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds".

As previously noted, once the Governor has submitted his budget to the Legislature, the latter is prohibited from considering any other appropriation bill until all of the bills submitted by the Governor have been finally acted upon by both houses, except on a message from the Governor certifying to the necessity of the immediate passage of such bill (NY Const, art VII, § 5). To the extent that respondents assert that this issue is nonjusticiable, we reject their contention. Here, petitioner is not merely challenging the wisdom of the Governor in undertaking an entirely discretionary task; rather, he requests this Court to interpret the scope of the Governor's authority to submit an appropriation bill upon a message of necessity. We not only have the authority, but the obligation, to interpret the scope of the Governor's authority in this regard *(see, Matter of King v Cuomo,* 81 NY2d 247, *supra).*

The deficiency in petitioner's position is that he does not assert that the appropriation bills at issue were not necessary and, consequently, has made no showing, minimal or otherwise, to that effect. What petitioner asserts is that the Legislature may not approve any appropriation bill in the absence of an emergency. We disagree.

Initially, we point out that NY Constitution, article VII, § 5 does not provide that the Governor certify that a state of emergency exists in order for the Legislature to approve a single appropriation bill before acting upon all of the bills submitted by the Governor with his budget; it requires only that the passage of the bill be a matter of necessity. We do not view the terms "emergency" and "necessity" as synonymous. Additionally, attention to the 1938 amendments to NY Constitution convincingly establishes that there is no need for an emergency in order to recommend and adopt an interim appropriation bill. The precursor to the NY Constitution, article VII, § 5 provided that: "Neither house shall consider further appropriations until the appropriation bills proposed by the governor shall have been finally acted on by both houses; nor shall such further appropriations be then made except by separate bills each for a single work or object, which bills shall be subject to the governor's approval as provided in section nine of article four. Nothing herein contained shall be construed to prevent the governor from recommending that one or more of his proposed bills be passed in advance of the others to supply the immediate needs of government or to meet an emergency" (1894 NY Const, art IV-A, § 4, as added in 1927).

When the NY Constitution was revised in 1938 to read as it does now, the language "or to meet an emergency" was deleted, which is a strong indication that the delegates to the Constitutional Convention did not intend to limit the passage of prebudget appropriation bills solely to emergency situations. What is or is not necessary in the adoption of prebudget appropriation bills is not at issue here. Suffice it to say that petitioner's assertion that all expenditures subsequent to April 1, 1995, absent an emergency, are unconstitutional is not supported by any fair interpretation of the NY Constitution. Petitioner's remaining contentions have been examined and found to be lacking in merit.

MIKOLL, J. P., WHITE, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order and judgment are affirmed, without costs.