564 S.E.2d 681

**Paresh SHAH, M.D. and Robert L. Waldron, II, M.D., Plaintiffs,**

**of whom, Robert L. Waldron, II, M.D. is the Appellant,**

**v.**

**RICHLAND MEMORIAL HOSPITAL, W. John Bayard, M.D., W. John Bayard, M.D., P.A., and Kester Freeman, Jr., in his individual and official capacities, Respondents.**

**No. 3497.**

Court of Appeals of South Carolina.

Heard April 11, 2002.

Decided May 20, 2002.

Rehearing Denied June 19, 2002.

---

140

142

Eric S. Bland, of Bland & Rickard; J. Preston Strom, Jr., and Robert D. Dodson, of Strom Law Firm, all of Columbia, for appellant.

Carl B. Epps, III, of Nelson, Mullins, Riley & Scarborough; Charles T. Speth, II and M. Brian Magargle, of Haynsworth, Baldwin, Johnson & Greaves; and Charles E. Carpenter, Jr., Frederick A. Crawford, Georgia Anna Mitchell, and S. Elizabeth Brosnan, of Richardson, Plowden, Carpenter & Robinson, all of Columbia, for respondents.

CURETON, J.:

Dr. Robert L. Waldron, II, (Waldron) a radiologist, brought this action against Richland Memorial Hospital (RMH) and the other named respondents asserting RMH was obligated by the terms of its hospital bylaws and regulations to equitably allocate all "undesignated" radiological work among the radiologists on staff. Waldron contends that RMH violated its hospital bylaws and regulations when it entered into an exclusive contract which prevented his participation in the allocation of radiological work. Waldron appeals the order of the circuit court dismissing his complaint with prejudice. We affirm in part, reverse in part, and remand.

## FACTS

As noted by the trial court, "[t]he facts and procedural history of this case are somewhat complex."[1] Waldron is a physician licensed to practice medicine in South Carolina. He is board certified in radiology with a certificate of added qualifications (CAQ) in neuroradiology. He has been an active member of the medical staff at RMH for over sixteen years with full admitting privileges within the Department of Radiology. From 1981 to 1989, Waldron served as the department's Professional Director. The Professional Director is an independent contractor with RMH who, for a fixed fee, performs certain contractually-defined services relating to the oversight of the Department of Radiology.

The practice of radiology is recognized as a hospital-based practice. In accordance with the hospital's Medical/Dental Staff Bylaws, Rules and Regulations dated May 1994 (Bylaws) and the Department of Radiology's Rules and Regulations (as implemented by the Medical Executive Committee (MEC)), Waldron was required to devote at least 120 hours per month to the Department of Radiology and was not entitled to practice at any hospital other than RMH.

All of the physician parties to this litigation were radiologists and former partners in Richland Radiological Associates (RRA).[2] RRA was organized, in part, to provide radiological services to RMH. RRA consisted of Waldron, Dr. Paresh Shah, Dr. Edward R. Sun, Dr. W. John Bayard, and several other radiologists.

After a considerable period of disagreement over the way radiological services were being provided, RRA was dissolved on February 24, 1995. Bayard, along with all of the former members of RRA except Waldron, Shah, and Sun, thereafter formed a new group, Richland Radiological Consultants (RRC). Waldron, Shah, and Sun were not asked to join RRC. Waldron has since practiced as an independent radiologist at RMH.

---

1. The court noted this action is one of four pending lawsuits that involved the various parties.

2. Kester Freeman is the CEO of Palmetto Health Alliance and the former president and CEO of RMH.

In December 1995, Bayard signed a three-year contract with RMH to be its Professional Director of the Department of Radiology. The contract was for the period of January 1, 1996 to December 31, 1998. The contract allowed Bayard to assign all "undesignated" radiological work at RMH to his group, RRC.[3] "Undesignated" radiological procedures are those where the treating physician does not specify a particular radiologist to perform the work.

On January 12, 1996, Bayard sent letters to Waldron, Shah, and Sun advising them that, effective March 1, 1996, he would exercise his authority under the Professional Director's contract and award all undesignated work to his group, RRC. Bayard's letters advised Waldron, Shah, and Sun that they would be permitted to continue practicing at the hospital, but their practice would be limited to cases specifically designated for them. According to Waldron, during his sixteen-plus years at RMH, all radiologists in the department had shared equitably in the undesignated cases on a rotating basis. The undesignated work comprised nearly all of the radiological work performed at RMH.

Waldron, Shah, and Sun filed this action on February 20, 1996, before the proposed change in the rotation schedule on March 1st, seeking a declaratory judgment that the proposed duty schedule violated the Bylaws and regulations of the hospital and the State Ethics Act. They also sought a permanent injunction barring the respondents from instituting the exclusive contractual arrangement, which granted RRC the exclusive right to treat undesignated patients, and the proposed duty rotation schedule, which excluded the appellants from treating undesignated patients as of March 1, 1996. In its final form, the complaint sought a declaratory judgment and permanent injunction and asserted claims for breach of contract, unfair trade practices, violation of 42 U.S.C. § 1983, and tortious interference with existing and prospective contractual relations. The appellants essentially asserted RMH had violated the Bylaws by giving Bayard an exclusive Professional Director's contract, which allowed him to assign all of

---

3. Bayard was first appointed the Professional Director of the Department of Radiology in 1989, and has served in this position under successive contracts.

the undesignated work in the hospital to his own group, RRC, to the exclusion of the appellants.[4]

The circuit court issued a temporary restraining order on February 29, 1996, and a preliminary injunction on August 14, 1996, requiring RMH to preserve the "status quo" during the pendency of this litigation.

In July 1996, RMH and Baptist Healthcare System of South Carolina, Inc. entered into a Pre–Incorporation and Joint Operating Agreement. Pursuant thereto, on February 9, 1998, RMH formally transferred all operational control of the hospital to the Palmetto Health Alliance (Alliance), a private, nonprofit entity organized as a 501(c)(3) corporation. On December 31, 1998, the disputed radiology contract with Bayard expired by its own terms.

In 1999, Bayard moved for a nonjury trial. Waldron opposed the motion. On March 23, 1999, the trial court entered an order granting Bayard's motion stating "all claims in equity and issues of law will be heard and decided by the Court."

The case proceeded to a bench trial on May 4 and 5, 1999, on the claims for breach of contract, declaratory judgment, and an injunction. At the commencement of trial, Respondents moved to dismiss those claims on the ground of mootness. On May 6, 1999, the parties met in chambers. Thereafter, several hearings were held on various motions submitted by the parties. Waldron moved (1) to amend the pleadings to add or substitute the Alliance and Palmetto Richland Memorial Hospital as parties, (2) for Leave to Supplement the Record, and (3) to preserve his jury trial rights on the remaining causes of action. No additional testimony was taken at these hearings.

On November 17, 1999, the trial court entered an order denying the motion to amend the complaint to substitute or join as defendants the Alliance and Palmetto Richland Memorial Hospital.

On December 27, 1999, the trial court entered an Order of Dismissal granting Respondent's motion to dismiss the three

---

4. Shah and Sun were also originally parties to this action. Sun settled all claims prior to the filing of RMH's motion to dismiss, and Shah settled during the pendency of this appeal.

causes of action for breach of contract, declaratory judgment, and a permanent injunction. The court dismissed the causes of action on the ground of mootness, noting a jury trial date would be set for the remaining causes of action. Waldron moved to alter or amend the order on January 5, 2000. He also filed a motion for a stay of the jury trial on the remaining causes of action.

On March 15, 2000, the court entered three additional orders: (1) granting the appellants' motion for leave to supplement the record, (2) denying appellants' motion to stay the jury trial of the remaining causes of action, and (3) amending the 12/17/99 Order of Dismissal on the ground of mootness. This appeal followed.

## LAW/ANALYSIS

### I. Amendment of Complaint

■ Waldron first contends the trial court misapprehended the law of successor liability and erred in denying the motion to amend the complaint to substitute or join the Alliance as a party defendant. We agree.

In August 1999, the appellants moved to amend the Third Amended Complaint to substitute or join as party defendants the Alliance and Palmetto Richland Memorial Hospital pursuant to Rules 15(a) and 25(c) of the South Carolina Rules of Civil Procedure. The motion was made on the grounds that the Alliance had contractually assumed the liabilities of its predecessor, RMH, and RMH now does "business under the trade name Palmetto Richland Memorial Hospital."

After a hearing, the trial court denied the motion on the grounds that (1) the appellants waited more than 1½ years after the creation of the Alliance before making the motion, (2) the formation of the Alliance was not the result of a mere name change, (3) the Alliance would be prejudiced by joinder because it did not participate in the extensive discovery conducted by the existing parties, and (4) the trial had already begun without the Alliance, thus adding the Alliance would require a mistrial and an additional delay. The court expressly "acknowledge[d] that the Rules require that amendments be 'freely' allowed when justice requires and there is no

prejudice." However, the court found "that justice does not require either the proposed amendments or the substitution of parties sought by Plaintiffs ... [and] that the Defendants, and the Alliance, would suffer substantial prejudice were Plaintiffs' Motions to be granted."

Rule 19(a)(1), SCRCP, provides in pertinent part that a person subject to process shall be joined as a party in the action if "in his absence complete relief cannot be accorded among those already parties." The notes to Rule 19 indicate that this rule is the same as the federal rule, and that the principle behind the rule is "that whenever possible persons materially interested in the action shall be joined so that they may be heard and a complete determination made." Rule 25(c), SCRCP, provides: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

 The trial court had the authority under Rule 19, SCRCP, to join the Alliance and Palmetto as parties if the same was necessary to afford complete relief to appellants. Moreover, under Rule 25, SCRCP, the trial court could have substituted the Alliance and Palmetto as parties instead of RMH. "The test of whether an amendment should be allowed is whether the amendment will prejudice or work an injustice to the adverse party." *Forrester v. Smith & Steele Builders, Inc.*, 295 S.C. 504, 509, 369 S.E.2d 156, 159 (Ct.App.1988). "Delay in seeking leave to amend pleadings, regardless of the length of the delay, will not ordinarily be held to bar an amendment *in the absence of a finding of prejudice.*" *Id.* at 508, 369 S.E.2d at 159 (emphasis added). The burden of establishing prejudice is on the party opposing the motion. *Pruitt v. Bowers*, 330 S.C. 483, 489, 499 S.E.2d 250, 253 (Ct.App.1998). "In the absence of a proper reason, such as bad faith, undue delay, or prejudice, a denial of leave to amend is an abuse of discretion." *Forrester*, 295 S.C. at 507, 369 S.E.2d at 158.

The trial court in effect concluded it was not feasible to join the Alliance as a party because the case had progressed to the point that adding the Alliance as a party would prejudice the

Alliance. However, the evidence before the trial court also established that the Alliance had a material interest in the litigation. We note that the 1998 Assignment and Assumption Agreement forming the Alliance specifically provides that the Alliance assumed the liabilities and obligations of RMH. Moreover, at the September 30, 1999 hearing in this matter, the Alliance's attorney acknowledged that the Alliance would be liable for any judgments incurred by its predecessor, RMH. As a result, the addition of the Alliance as a party was necessary so that the party who would be ultimately responsible for the judgment would have an opportunity to be heard, thus providing a complete determination of the liability flowing from Respondent's conduct. Rule 19(a)(1) SCRCP, appears to mandate that under the circumstances of this case, the Alliance should be made a party in order to preclude Waldron from having to pursue future lawsuits against the Alliance to enforce judgments he may obtain against Respondents. 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure, Civil 3d* § 1603 (2001).

We find the Alliance would not be unduly prejudiced by being made a party to the litigation. Its addition would not only avoid multiplicity of actions, but would afford the Alliance the opportunity to participate in the making or avoidance of a judgment it could be called upon to satisfy. The trial court, therefore, erred in failing to grant Waldron leave to amend his pleadings to add the Alliance as a party.

## II. Mootness

■ Waldron next contends the trial court erred in concluding his causes of action for breach of contract, declaratory judgment, and injunctive relief should be dismissed on the ground of mootness. Waldron argues the trial court misapprehended and misapplied the law with regard to the mootness doctrine and the exceptions to the doctrine. Waldron also avers the trial court misapprehended and misapplied the law with regard to the law of declaratory judgments, injunctive relief and the creation of contractual rights. We agree in part.

Respondents moved to dismiss the complaint essentially alleging the complaint was moot because (1) the disputed

radiology contract between RMH and Bayard expired by its own terms on December 31, 1998, (2) the injunctions issued in this case preserved the status quo and enjoined the respondents from implementing the proposed change in the duty schedule, and (3) the governmental entity, RMH, no longer operates the radiology department following the consummation of the Joint Operating Agreement (between the hospital and Baptist Healthcare System, dated July 10, 1996) and the resulting assignment of the radiology contract to the Alliance on February 9, 1998.

The trial court dismissed the breach of contract cause of action finding that the action was moot. The trial court held that the formation of the Alliance and its assumption of operational control of the hospital prevented the court from granting effective relief because RMH had ceased to exist and there was no party that could be bound by its ruling. Additionally, the trial court determined that it was not necessary to address the issue of whether the Bylaws, rules and regulations and course of dealing between the parties created a contract providing Waldron with certain rights to the equitable distribution of the undesignated radiological procedures. The trial court held the temporary injunction granted by the court prevented the implementation of the proposed rotational schedule and, because the contract is now expired, Waldron could prove no damages.

Waldron contends the trial court erred in holding that, even assuming the Bylaws formed a contract and the contract was breached by the proposed scheduling of the undesignated procedures, he was unable to establish damages flowing from a breach because the temporary injunction prevented the implementation of the proposed duty rotation schedule. Waldron asserts that it was an error for the trial court not to permit evidence on the issue of damages, arguing he suffered collateral damages from the proposed duty rotation schedule despite the issuance of the preliminary injunction by the court. We agree.

Initially we find that the trial court erred in holding that there is no entity against which a judgment may be enforced, finding that there was nothing in the Assignment and Assumption Agreement that indicated a judgment could be enforced

against the Alliance. Our review of the record, however, shows that the attorney for the Alliance conceded at a motion hearing that the language in the Assignment and Assumption Agreement means that if there is any judgment in this case the Alliance has responsibility for satisfying the judgment.

Because Waldron does not limit his allegation of damages to the institution of the proposed duty rotation schedule, we further find the trial court erred in finding as a matter of law that Waldron could not prove any damages flowed from the alleged breach of the Bylaws contract as there was no evidence presented to the court regarding what the damages may have been. We find that whether or not Waldron is able to prove damages goes to whether there is evidence to support his cause of action. Therefore, the fact the schedule was not instituted is not determinative of whether this cause of action is moot and is not appropriately addressed in a motion to dismiss on the ground of mootness. Accordingly, the trial court erred in finding Waldron's first cause of action for breach of contract was moot.

■■■■ Additionally, Waldron argues the trial court erred in finding that the requests for a declaratory judgment and a permanent injunction were likewise moot. We disagree.

■■■■ An appellate court "will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." *Mathis v. South Carolina State Highway Dep't,* 260 S.C. 344, 346, 195 S.E.2d 713, 714 (1973). "A case becomes moot when judgment, if rendered, will have no practical legal effect upon [an] existing controversy. This is true when some event occurs making it impossible for [a] reviewing [c]ourt to grant effectual relief." *Id.* at 346, 195 S.E.2d at 715. "Moot appeals differ from unripe appeals in that moot appeals result when intervening events render a case nonjusticiable." *Curtis v. State,* 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001).

■■■■ In the civil context, there are three general exceptions to the mootness doctrine. *Curtis,* 345 S.C. at 568, 549 S.E.2d at 596.

First, an appellate court can take jurisdiction, despite mootness, if the issue raised is capable of repetition but

evading review. Second, an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest. Finally, if a decision by the trial court may affect future events, or have collateral consequences for the parties, an appeal from that decision is not moot, even though the appellate court cannot give effective relief in the present case.

*Id.* (citations omitted).

In his complaint, Waldron sought a declaration that Bayard and Freeman, as public employees or public officials, were obligated to avoid conflicts of interest, and that the exclusive contractual arrangement and the proposed duty rotation schedule violated the State Ethics Act.[5] Waldron also sought permanent injunctive relief restraining RMH from instituting the exclusive contractual arrangement which grants RRC the exclusive right to perform the undesignated procedures, effectively preventing Waldron from participating in the treatment of undesignated patients.

The trial court noted the State Ethics Act applies only to public officials, members, and employees and found "RMH, as a governmental health care provider, was subject to the State Ethics Act, [but] the Act does not apply to a private 501(c)(3) corporation like the Alliance." The court concluded it need not reach the issue of whether the challenged conduct violated the State Ethics Act as "any declaratory judgment would constitute an impermissible 'advisory opinion.'" The court further stated the "Plaintiffs have failed to satisfy this Court that relief by way of a permanent injunction is needed." The court based this conclusion on the fact that "[n]othing remains to be enjoined. No contract remains to be construed. The disputed Radiology Contract has expired."

---

**5.** *See* S.C.Code Ann. § 8–13–700(A) (Supp.2001) ("No public official, public member, or public employee may knowingly use his official office, membership, or employment to obtain an economic interest for himself ... or a business with which he is associated."); S.C.Code Ann. § 8–13–775 (Supp.2001) ("A public official, public member, or public employee may not have an economic interest in a contract with the State or its political subdivisions if the public official, public member, or public employee is authorized to perform an official function relating to the contract.").

We agree with the trial court that any issue regarding the violation of the State Ethics Act is now moot because the Alliance is no longer a governmental entity, and therefore any declaration that the actions taken by RMH violated the State Ethics Act would be advisory in nature. We also find no exception to the mootness doctrine that would apply to this set of facts, as the Alliance is a private entity and not subject to the State Ethics Act.

Likewise, we find that the request for a permanent injunction is no longer viable as the disputed contract has now expired, and thus there is nothing for the court to enjoin. Additionally, we find that there is no exception to the mootness doctrine that would be applicable because the language in the complaint seeking the permanent injunction specifically sought to enjoin the institution of the Radiology contract and proposed duty rotation schedule then in existence.

### III. Dismissal of Waldron's causes of action

 Waldron finally contends the trial court caused prejudice, in the form of collateral estoppel, by denying him a jury trial, proceeding to make findings of fact and conclusions of law without giving him the opportunity to make his record, denying his motion for a stay, and dismissing the action with prejudice.

 To the extent Waldron is arguing he should have been awarded a jury trial, we find this issue is not properly before us. Our supreme court has held that orders concerning the mode of trial affect substantial rights as provided under S.C.Code Ann. § 14–3–330(2) (1976) and must be appealed immediately. *Lester v. Dawson*, 327 S.C. 263, 266, 491 S.E.2d 240, 241 (1997). Thus, where a party fails to immediately appeal an order designating the case as a non-jury matter, it acts as a waiver of the right to appeal that issue and a subsequent appeal is barred. *Id.; see also Foggie v. CSX Transp.*, 313 S.C. 98, 103, 431 S.E.2d 587, 590 (1993) ("Issues regarding mode of trial must be raised in the trial court at the first opportunity, and the order of the trial court is immediately appealable.").

Waldron also argues he was prejudiced because he was not able to fully present his case before the trial court dismissed

the three claims with prejudice. Based on our holding above, we need not further address the trial court's dismissal of Waldron's first three claims. We agree with Waldron that the cause of action for breach of contract should be heard on its merits. As to the remaining causes of action, there is no evidence in the record as to the current status of these claims, but we find the court's dismissal could have no direct effect on the remaining claims, especially in light of our partial reversal and remand.

## CONCLUSION

We affirm the trial court's dismissal of Waldron's requests for a declaratory judgment regarding the State Ethics Act and a permanent injunction. However, we reverse the trial court's denial of the motion to amend to add the Alliance as a party and the dismissal of the claim for breach of contract, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and HOWARD, JJ., concur.