58 P.3d 649

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL–CIO; Hawai'i Government Employees Association, AFSCME, Local 152, AFL–CIO; Hawai'i State Teachers Association; and Hawai'i Fire Fighters Association, Local 1463, International Association of Fire Fighters, AFL–CIO, Plaintiffs–Appellees/Cross–Appellants,

v.

Davis YOGI, Chief Negotiator, State of Hawai'i; Benjamin Cayetano, Governor, State of Hawai'i; The Board of Education; Maryanne Kusaka, Mayor, County of Kaua'i; Stephen Yamashiro, Mayor, County of Hawai'i, Defendants–Appellants/Cross–Appellees,

and

Jeremy Harris, Mayor, City and County of Honolulu; James Apana, Mayor, County of Maui; and The Board of Regents of The University of Hawai'i, Defendants/Cross–Appellees.

No. 23705.

Supreme Court of Hawai'i.

Dec. 6, 2002.

Herbert R. Takahashi (Rebecca L. Covert, Honolulu, with him on the briefs), of Takahashi, Masui & Vasconcellos, for plaintiffs-appellees/cross-appellants.

Gary Hynds, Deputy Attorney General, (Kathleen A. Watanabe, with him on the briefs), for defendants-appellants/cross-appellees Davis Yogi, Benjamin Cayetano, and The Board of Education.

Ted H.S. Hong, Deputy Corporation Counsel, (Margaret Hanson, with him on the briefs) for defendants-appellants/cross-appellees Stephen Yamashiro and Maryanne Kusaka.

Steven Christensen, Deputy Corporation Counsel, on the brief, for defendant-appellant/cross-appellee Stephen Yamashiro.

Opinion by RAMIL, J., in which ACOBA, J. Joins, Announcing the Decision of the Court.

Defendants-appellants/cross-appellees Davis Yogi, Chief Negotiator, State of Hawai'i; Benjamin Cayetano, Governor, State of Hawai'i; The Board of Education; Maryanne Kusaka, Mayor, County of Kauai; Stephen Yamashiro, Mayor County of Hawai'i; Jeremy Harris, Mayor, City and County of Honolulu; James Apana, Mayor, County of Maui; and the Board of Regents of the University of Hawai'i [hereinafter, collectively, Defendants],[1] appeal from the August 4, 2000 judgment and order of the first circuit court[2] in favor of plaintiffs-appellees/cross-appellants public employee unions [hereinafter, collectively, Plaintiffs].[3] The judgment and order declared unconstitutional Section 2 of Act 100, *see* 1999 Haw. Sess. L. Act 100, § 2, at 368–69, which prohibits public employers and public employee unions from collectively bargaining over cost items for the biennium 1999 to 2001 and permanently enjoined Defendants from enforcing it. Plaintiffs cross-appeal from those portions of the court's order dismissing their alternative grounds for relief.[4]

The main issue before us is whether Section 2 violates article XIII, section 2 of our state constitution.[5] We hold that it does. Accordingly, we focus our analysis on Plaintiffs' collective bargaining rights. We affirm.

## I. BACKGROUND

During the 1999 legislative session, the Hawai'i State Legislature enacted Act 100. *See* 1999 Haw. Sess. L. Act 100, at 368–70. Section 2 of Act 100 amended Hawai'i Revised Statutes ("HRS") § 89–9(a) by adding the language underscored:

### § 89–9 Scope of negotiations.

[Section effective until June 30, 2002 .... ](a) The employer and the exclusive representative shall meet at reasonable times, including meetings in advance of the employer's budget-making process, and shall negotiate in good faith with respect to wages, hours, the number of incremental

1. All of the above persons were defendants at the trial level. Defendants Jeremy Harris and the Board of Regents of the University of Hawai'i did not appeal the judgment but have responded to the plaintiffs' cross-appeal and so are actually defendants/cross-appellees.

2. The Honorable Virginia Lea Crandall presided over this case.

3. The plaintiffs in this case include United Public Workers, AFSCME, Local 646, AFL–CIO; Hawai'i Government Employees Association, AFSCME, Local 152, AFL–CIO; Hawai'i State Teachers Association; and Hawai'i Fire Fighters Association, Local 1463, International Association of Fire Fighters, AFL–CIO.

4. Plaintiffs cross-appeal the circuit court's order on the following grounds:
   (1) The court erred by excluding the entire testimony of Bender, a linguistic expert, on the meaning and significance of key constitutional terms and phrases.
   (2) The court erred in concluding that the employees' right under article XIII of the constitution is not a "fundamental right."
   (3) The court erred in concluding that enforcement of Section 2 did not violate the equal protection clause under article I, section 5 of the constitution.
   (4) The court erred in concluding that Section 2 did not violate the doctrine of separation of powers.

   (5) The court erred in concluding that Section 2 did not violate article III, section 14 of the constitution which mandates that "[e]ach law shall embrace but one subject."

   Because we hold that Section 2 of Act 100 violates the rights of public employees under article XIII, section 2 of the Hawai'i Constitution, we need not address Plaintiffs' cross-appeal claims.

5. Article XIII, section 2 [formerly article XII, section 2] provides that "[p]ersons in public employment shall have the right to organize for the purpose of collective bargaining as provided by law." Prior to the 1968 amendment, article XII, section 2 provided that "[p]ersons in public employment shall have the right to organize and to present their grievances and proposals to the State, or any political subdivision or any department or agency thereof." *Proceedings of the Constitutional Convention of Hawai'i of 1968,* at 476 (1972) [hereinafter 1 *Proceedings 1968*]. Article XII, section 2 was amended in 1968 to read, "[p]ersons in public employment shall have the right to organize for the purpose of collective bargaining as prescribed by law." *Id.* at 207. Ten years later, at the 1978 Constitutional Convention, article XII, section 2 was renumbered to article XIII, section 2, and the phrase, "as prescribed by law" was replaced with the phrase as "provided by law." *Proceedings of the Constitutional Convention of Hawai'i of 1978,* at 743 (1980) [hereinafter 1 *Proceedings 1978* ].

and longevity steps and movement between steps within the salary range, the amounts of contributions by the State and respective counties to the Hawai'i public employees health fund to the extent allowed in subsection (e), and other terms and conditions of employment which are subject to negotiations under this chapter and which are to be embodied in a written agreement, or any question arising thereunder, but such obligation does not compel either party to agree to a proposal or make a concession; provided that the parties may not negotiate with respect to cost items as defined by section 89–2 for the biennium 1999 to 2001, and the cost items of employees in bargaining units under section 89–6 in effect on June 30, 1999, shall remain in effect until July 1, 2001.

HRS § 89–9(a) (2001) (underscoring added). "Cost items" include "wages, hours, amounts of contributions by the State and Counties to the Hawai'i public employees health fund, and other terms and conditions of employment, the implementation of which requires an appropriation by a legislative body."

6.  In pertinent part, the trial court's conclusions of law stated as follows:

8.  *With respect to Article XIII, Section 2, of the Hawai'i State Constitution, the phrase "as provided by law" does not provide the legislature with unfettered discretion to enact law which take away all issues from the process of collective bargaining*

9.  Such a construction that the legislature has unlimited discretion would produce an absurd result inconsistent with the purpose of Article XIII, Section 2, Hawai'i State Constitution. *See* [ ] *In [r]e Application of Pioneer Mill Co.*, 53 Haw. 496, 500 [, 497 P.2d 549, 552] (1972).

10.  The legislature has wide authority to set the parameters for collective bargaining and has constitutionally exercised such legislative discretion and authority on previous occasions, for example; establishing the bargaining units (§ 89–6), specifying matters that are not subject to collective bargaining such as Health Fund Benefits (§ 89–9(d)), determining the expiration date for collective bargaining agreements and proscribing reopener of cost items during the agreement (89–10(c)).

11.  The legislature has the authority and discretion to decide whether to fund collective bargaining agreements or arbitration awards. §§ 89–10(b) and 89–11(d), HRS.

12.  *While the legislature has broad authority to structure the collective bargaining process, it may not infringe on the "core principles of*

HRS § 89–2 (1993). In essence, Section 2 of Act 100 prohibited public employers and public employees' unions from collectively bargaining over cost items for the biennium 1999 to 2001.

On October 11, 1999, Plaintiffs filed a complaint against Defendants, alleging, *inter alia*, that, Section 2 violated their "right to organize for the purpose of collective bargaining" as provided by article XIII, section 2 of the Hawai'i Constitution. The complaint sought injunctive and declaratory relief.

A non-jury trial was held on January 4, 6, and 7, 2000 on the consolidated motion for preliminary injunction and trial on the merits. Plaintiffs did not request damages at trial. Plaintiffs moved for costs on March 17, 2000.

On August 4, 2000, the trial court issued its findings of fact, conclusions of law, orders, and judgment, ruling that Section 2 violated Plaintiffs' state constitutional right to collectively bargain and issued a permanent injunction against its enforcement.[6]

*the bargaining" as mandated by Article XIII, Section 2 of the Hawai'i State Constitution.*

13.  *A legislative prohibition against the employer and employee discussing all cost items including wages is an unconstitutional infringement on the right to organize for the purpose of collective bargaining. ...* Section 2, Act 100, 1999 SLH is an unwarranted infringement of the constitutional right of public employees "to organize for the purpose of collective bargaining as provided by law."

14.  It is uncontroverted that wages and cost items are the core of the subjects of collective bargaining in the private and public sectors.... By prohibiting bargaining over "cost-items" and establishing, in effect, a freeze in contractual terms on cost items from July 1, 1999 to July 2001, section 2. Act 100, 1999 SLH, abrogates the right of public employees "to organize for the purpose of collective bargaining as provided by law" under Article XIII, Section 2 of the Hawai'i State Constitution.

(Emphases added.)

Based on the findings and conclusions, the court ordered, adjudged and declared[ ] that Section 2, Act 100, 1999 SHL, is unconstitutional and null and void on grounds that it violates the right of public employees represented by Plaintiffs ... "to organize for the purpose collective bargaining as provided by law" in contravention of Article XIII, Section 2 of the Hawai'i State Constitution.

On August 29 through September 1, 2000, Defendants filed notices of appeal. On September 1, 2000, Plaintiffs filed a notice of cross-appeal. On September 5, 2000, the court awarded Plaintiffs costs of $6,044.60.

Defendant Yogi submits that the court committed reversible error in declaring Section 2 unconstitutional and in issuing an injunction against the enforcement of the Act. Yogi contends that article XIII, section 2 "recognize[s] a constitutional right to organize for the purpose of collective bargaining" but "does not create a right to collectively bargain." Yogi maintains that, by inserting the phrase as "provided by law", the framers intended for the legislature to retain the ultimate authority to govern the parameters of collective bargaining. According to Yogi, committee reports of the constitutional convention indicate the drafters's intent "to give complete discretion to the legislature to define the terms of collective bargaining for public employees." Yogi lists "numerous amendments" to HRS § 89–9 to show "[t]he legislature's power to control the scope of collective bargaining." Yogi concludes that "if the legislature had the power to grant public employees the right to collectively bargain over cost items, the legislation had the authority to suspend that right."

Defendants Kusaka and Yamashiro argue that (1) the legislature intended Section 2 to serve an important public interest; (2) HRS chapter 89 exhibits examples of the legislature's discretion to limit the right to bargain collectively; and (3) Plaintiffs suffered no irreparable injury.[7]

Plaintiffs assert that (1) the words "collective bargaining as provided by law" in article XIII, section 2 had "a well-recognized meaning in pre-existing federal and state stat-

utes[ ] and five state constitutions" by 1968, and the term "law" referred "not just to statutory 'law,' but also to constitutional and case 'law' which gave substance and meaning to the words 'collective bargaining' "; (2) "the object of the 1968 amendment was to extend to public employees rights enjoyed by private employees"; and (3) their position is supported by the legislative history of HRS chapter 89, "contemporary 'understanding' " of the meaning of "collective bargaining as provided by law," and case law from other states.

## II. *STANDARDS OF REVIEW*

### A. *Constitutional Construction*

We review questions of constitutional law *de novo*, under the right/wrong standard. *Bank of Hawai'i v. Kunimoto*, 91 Hawai'i 372, 387, 984 P.2d 1198, 1213, *recon. denied*, 91 Hawai'i 372, 984 P.2d 1198 (1999). "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000).

· In interpreting a constitutional provision, "the words of the constitution are presumed to be used in their natural sense ... 'unless the context furnishes some ground to control, qualify or enlarge (them).' " *State ex rel. Amemiya v. Anderson*, 56 Haw. 566, 577, 545 P.2d 1175, 1182 (1976) (citation omitted).

"We have long recognized that the Hawai'i Constitution must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional provision is to give effect to that intent." *Convention Center Auth. v. Anzai*, 78 Hawai'i 157, 167,

The court also ordered and adjudged that Plaintiffs' request for permanent injunction be and is hereby granted. Accordingly, the above named Defendants, their officers, agents, servants, employees, and all other persons acting in concert or participation with them are permanently enjoined from enforcing Section 2, Act, 100, 1999 SLH, in its entirety.

7. Defendants argue that chapter 89 of the HRS contains several examples of how the legislature limited the scope, subjects, and time period for

negotiations over costs items. *See e.g.*, HRS § 89–6 (excluding an entire class of "public employees" from bargaining collectively); HRS § 89–9 (excluding entire subjects from collective bargaining process); HRS § 89–10 (restricting the lifetime of collective bargaining agreements and when negotiations, including cost "items," may be reopened.) However, the examples cited by the Defendants are not issues before this court. Accordingly, we need not address the constitutionality of these cited sections of chapter 89.

890 P.2d 1197, 1207 (1995). "This intent is to be found in the instrument itself. When the text of a constitutional provision is not ambiguous, the court, in construing it, is not at liberty to search for its meaning beyond the instrument." *State v. Kahlbaun*, 64 Haw. 197, 201, 638 P.2d 309, 314, *recon. denied*, 64 Haw. 197, 638 P.2d 309 (1981) (citations omitted).

## B.  Statutory Interpretation

"The constitutionality of a statute is a question of law which is reviewable under the right/wrong standard.... [T]his court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest and unmistakable." *State v. Bates*, 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997).

## III.  *DISCUSSION*

"In the construction of a constitutional provision, the rule is well established that the words of the constitution are presumed to be used in their natural sense." *Employees' Ret. Sys. v. Budget Dir. Ho*, 44 Haw. 154, 159, 352 P.2d 861, 864–65 (1960). The words "as provided by law" do not appear to be ambiguous and therefore are presumed to be used in their natural sense. The court may look at "legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms ... not defined." *State v. Kalama*, 94 Hawai'i 60, 63 n. 6, 8 P.3d 1224, 1227 n. 6 (2000).

At the time that the proposed amendment to article XII, section 2 (now article XIII, section 2) was drafted and ratified, the word "law" was understood to mean "a rule of conduct prescribed by lawmaking power of state" or "judicial decisions, judgments or decrees." *Black's Law Dictionary* 1028 (1968). "Provided" was defined as "[t]he

word used in introducing a proviso.... Ordinarily, it signifies or expresses a condition; but, this is not invariable; for according to the context, it may import a covenant, or a limitation or qualification, or a restraint, modification, or exception to something which precedes." *Id.* at 1388, 8 P.3d 1224. As written, the dependent clause "as provided by law" qualifies the preceding independent clause describing the right to organize for collective bargaining.

Similar principles of construction were applied to the identical phrase in article I, section 11, in *State v. Rodrigues*, 63 Haw. 412, 629 P.2d 1111 (1981).[8] Section 11 "create[d] the position of an independent grand jury counsel, [but] it fail[ed] to define the number of independent counsel required, appointment or removal procedure, qualifications, length of term, compensation, or source of funding." *Id.* at 414, 629 P.2d at 1113. In *Rodrigues*, the defendants argued that article I, section 11 was "self-executing" and "mandate[d] the immediate appointment of independent counsel to grand juries." *Id.* at 413, 629 P.2d at 1113. Disagreeing, this court observed that, at the time article I, section 11 was adopted, there was no other constitutional provision or statute to which the phrase "as provided by law" could refer. *Id.* at 415, 629 P.2d at 1114. We held that in the absence of a constitutional provision or statute to which "as provided by law" could refer, "subsequent legislation was required to implement the amendment." *Id.*, 629 P.2d at 1114.

Relying on cases from other jurisdictions, this court in *Rodrigues* observed that the phrase "as provided by law" has been interpreted as "a direction to the legislature to enact implementing legislation," that "the subject matter which this phrase modifies is not locked into the Constitution but may be dealt with by the Legislature as it deems appropriate," and that the phrase "directs the legislature to provide the rule by which

8. Article I, section 11 provides as follows:
   Whenever a grand jury is impaneled, there shall be an independent counsel appointed as *provided by law* to advise the members of the grand jury regarding matters brought before it. Independent counsel shall be selected from among those persons licensed to practice law by the supreme court of the State and shall not be a public employee. The term and compensation for independent counsel shall be as provided by law.
   (Emphasis added).

the general right which it (the constitutional provision) grants may be enjoyed and protected." *Id.*, 629 P.2d at 1114. Defendant Yogi rely heavily on *Rodrigues* to support their argument that the legislature has an unfettered discretion to enact law which take away all issues from the process of collective bargaining. Defendant Yogi contends that "as provided by law" clearly indicates that legislation is required before the right created becomes enforceable.

Defendants' reliance on *Rodrigues* is inapposite. The context in which the phrase as "provided by law" in *Rodrigues* was used is factually distinguishable from the situation presented in the instant case. Unlike the amendment at issue in *Rodrigues*, when article XII, section 2 was amended in 1968, there were pre-existing federal and state statutes, constitutional provisions, and court cases which give meaning to the term "collective bargaining."

Before the framers convened in 1950, the Wagner Act, as amended, defined collective bargaining as the "mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d) (2002). In 1945, territorial lawmakers modeled Hawai'i's first collective bargaining statute after Wagner Act, and specifically defined collective bargaining in the Hawai'i Employment Relations Act as follows:

> "Collective bargaining" is the negotiating by an employer and a majority of the employer's employees in a collective bargaining unit (or their representatives) concerning representation or terms and conditions of employment of such employees in a mutually genuine effort to reach an agreement with reference to the subject under negotiation.

HRS § 377-1(5).

Private and public employees had already been granted varying degrees of constitutional protection for collective bargaining in the states of New York in 1939, Florida in 1944, Missouri in 1945, and New Jersey in 1947. The framers acknowledged their awareness of the statutory and state constitutional provisions in formulating and adopting article XII in 1950, and considered the right of employees fundamental enough to grant it constitutional foundations as four other states had done. 1 *Proceedings 1950* at 236, 238–39.

Before the voters ratified the constitutional provision, by plebiscite held on June 27, 1959, the United States Supreme Court had clarified that the right to organize for collective bargaining obligated employers to negotiate in good faith over wages, hours, and other terms and conditions of employment. *Local 24 of the Int'l Bhd. v. Oliver*, 358 U.S. 283, 295, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959).

The record of the proceedings at the 1968 constitutional convention verified that the framers actually knew wh at "collective bargaining as provided by law" (or as "prescribed by law") meant. 1 *Proceedings 1968* at 207, 342, 429. In fact, they were even provided a written opinion by the Attorney General on the legal question.

> "Collective bargaining" has been defined as: "[A] procedure looking toward the making of a collective agreement between the employer and the accredited representative of his employees concerning wages, hours, and other conditions of employment." 51 CJS, *Labor Relations* (1967 ed.), sec. 148.

1 *Proceedings 1968* at 479.

Thus, unlike the provision at issue in *Rodrigues*, "collective bargaining as provided by law" had a well recognized meaning, usage, and application under both federal and state laws as well as case law.[9] At the time article XII, section 2 was amended, there were federal, state, and case laws to which the phrase "collective bargaining as provided by law" could refer. Accordingly, we must consider the constitutionality of Section 2 of Act 100 in

---

9. Our understanding that the word "law" could also refer to case law is not a novel idea. For example, in *Konno v. County of Hawai'i*, we held that the phrase "as defined by law" in Article XVI, Section 1 required an examination of "statutory law and case law." 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997).

light of these other sources of law which give meaning to that provision.

Our state's constitution " 'must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional provision is to give effect to that intent.' " *Hirono v. Peabody*, 81 Hawai'i 230, 232–33, 915 P.2d 704, 707 (1996). "This intent is to be found in the instrument itself." *Kahlbaun*, 64 Haw. at 201, 638 P.2d 309.

Based upon our careful review of the proceedings of the constitutional convention, we find that the framers of article XII, section 2 did not intend to grant our legislators complete and absolute discretion to determine the scope of "collective bargaining." There are evidence in the 1968 proceedings indicating that the framers were not in favor of granting the legislature the ultimate power to deny the right to organize for the purpose of collectively bargaining. For instance, the framers defeated an amendment in the committee of the whole to limit public employee rights to "procedures as established by law in the areas therein prescribed" by a vote of 62 to 13. 1 *Proceedings 1968* at 495. Moreover, when Delegate Kauhane voiced his understanding of the purpose of Committee Proposal No. 5 (thereafter adopted as article XII, section 2), it was evident that no one opposed such interpretation. Delegate Kauhane remarked:

Mr. Chairman, I speak in favor of Proposal No. 5. The purpose and intent of Proposal No. 5 is to protect the right to organize for the purpose of collective bargaining. As a matter of Constitutional right, however, that right is subject to reasonable regulation by the legislature. That's why the insertion of the words "as prescribed by law" or probably some would like to have the words "in accordance with law." Certainly, Mr. Chairman, the legislators should be prevailed upon to take their stand on this matter of providing the necessary regulations as prescribed by law. This is one of the responsibilities and they should not shirk this responsibility in providing the necessary regulations for collective bargaining by government employees.

1 *Proceedings 1968* at 497–98. Delegate Kauhane observed:

Perhaps the words "as prescribe by law" mean that the right of collective bargaining and the right to organize don't exist until the legislature prescribes and recognizes that right. And therefore the legislature should at this time recognize this right and establish regulations for the right for collective bargaining. To recognize the right to organize for the purpose of collective bargaining is a matter of policy. *It does not mean that the legislature can take away that right nor remove that right, of the public employees to organize and bargain collectively.* This proposal is for the purpose, the full purpose of protecting the rights of public employees to organize for the specific purpose of collective bargaining. I urge that the proposal submitted by the committee be approved.

1 *Proceedings 1968* at 498 (emphasis added). Thereafter, Committee Proposal No. 5 was adopted by a vote of 57 to 17. The fact the none of the framers rose to oppose such interpretation was a strong indicia of the framers' acquiescence to Delegate Kauhane's understanding of the phrase "as prescribed by law."

That the framers did not intend to grant the legislature absolute discretion to take away the right to collectively bargain altogether is also evident in Delegate Yoshinaga's remarks during the 1968 proceedings. He pleaded:

All that the government employees ask here is the right of an expression in our Constitution, the finest document in the land, we hope when we get through, that they too shall have the right not only to organize but to use that organization for collective bargaining purposes so that can better their standard of living, so they can walk and live and study and play in Hawai'i like all employees.

Mr. Chairman, all they ask is that right from this Convention. *That right will have to be implemented by legislation and if the legislature fails, perhaps that right will be taken into court for court action, I do not know. But that is all government employees are asking.*

I urge all of you here, if you do nothing else in this convention, to adopt one principle that declares to anyone who works in Hawai'i that in Hawai'i at least we recognize that there may be some differences between the private employees and the public employees, but that the people of Hawai'i, through our constitutional delegation, are trying to make people equal here whether they work for the private industrial empire here or for the government of the State and county.

1 *Proceedings 1968* at 497 (emphasis added). Based upon Delegate Yoshinaga's remarks, it is clear that the intent and object of the framers was to extend to public employees similar rights to collective bargaining previously adopted in 1950 for "persons in private employment" under article XII, section 1 of the Constitution. 1 *Proceedings 1968* at 497. A construction of article XII, section 2 that would allow the legislature to have absolute power to deny public employees the right to negotiate on core issues of collective bargaining is simply inconsistent with the framers' objectives in adopting this provision.

In construing a constitutional provision, the court can also look to understanding of voters who ratified the constitutional provision, and legislative implementation of constitutional amendment. *Kahlbaun,* 64 Haw. at 202, 638 P.2d 309. At the time the people voted, the word "collective bargaining as prescribed by law" had a well recognized meaning. Black's defined "collective bargaining" as follows:

COLLECTIVE BARGAINING. As contemplated by National Labor Relations Act is a procedure looking toward making of collective agreements between employer and accredited representatives of employees *concerning wages, hours, and other conditions of employment,* and requires that parties deal with each other with open and fair minds and sincerely endeavor to overcome obstacles existing between them to the end that employment relations may be stabilized and obstruction to free flow of commerce prevented.

*Black's Law Dictionary* 328–29 (1968) (emphasis added). Webster's defines the phrase "collective bargaining" as:

[A] negotiation for the settlement of terms of collective agreement between an employer or group of employers on one side and a union or number of unions on the other; broadly, any union-management negotiation.

"Collective agreement" is defined as:

[A]n agreement between an employer and a union usually reached through collective bargaining and *establishing wage rates, hours of labor, and working conditions.*

*Webster's Third New International Dictionary* (1966) (emphasis added). Finally, Random House defines "collective bargaining" as follows:

[T]he process by which *wages, hours, rules, and working conditions are negotiated* and agreed upon by a union with an employer for all the employees collectively whom it represents.

*Random House Unabridged Dictionary* (1967) (emphasis added).

In light of the foregoing definitions of "collective bargaining," it is clear that, when the people ratified article XII, section 2, they understood the phrase to entail the ability to engage in negotiations concerning core subjects such as wages, hours, and other conditions of employment. Section 2 of Act 100 violates article XII, section 2, because it withdraws from the bargaining process these core subjects of bargaining that the voters contemplated.

Granting the lawmakers absolute discretion to define the scope of collective bargaining would also produce the absurd result of nullifying the "right to organize for the purpose of collective bargaining." A constitutional provision must be construed "to avoid an absurd result" and to recognize the mischief the framers intended to remedy. *State v. City of Sherwood,* 489 N.W.2d 584, 588 (N.D.1992). As a matter of policy, we do not blindly apply rules of construction to the point that we reach absurd conclusions that are inconsistent with the intent of our lawmakers. *See e.g., State v. Kahlbaun,* 64 Haw. 197, 206, 638 P.2d 309, 317 (1981) ("A legislative construction implementing a constitutional amendment cannot produce an absurd result or be inconsistent with the pur-

poses and policies of the amendment."); *Dines v. Pac. Ins. Co., Ltd.*, 78 Hawai'i 325, 337, 893 P.2d 176, 188 (1995) (Ramil, J., dissenting) (*citing Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 60, 868 P.2d 1193, 1207, *recon. denied*, 76 Hawai'i 247, 871 P.2d 795 (1994)) ("Statutory construction dictates that an interpreting court should not fashion a construction of statutory text that effectively renders the statute a nullity or creates an absurd or unjust result.").

Here, the intent and object of the framers who adopted article XII, section 2 was to extend to public employees similar rights to collective bargaining previously adopted for private employees under article XII, section 1.[10] Defendants' construction of article XII, section 2 would render that provision meaningless, because, if we follow the Defendants' reading of that provision to its logical conclusion, it would be possible for the legislature to establish a freeze in contractual terms on cost items not only for two years but for two decades. Surely, the framers did not contemplate such an absurd and unjust result, especially in light of the fact that their foremost intent in drafting this constitutional provision is to improve the standard of living of public employees.[11] Accordingly, we reject Defendants' contention that the phrase

10. Article XII, section I of the Hawai'i Constitution states, "Persons in private employment shall have the right to organize for purposes of collective bargaining."

11. That the framers' primary intent was to better the lives of public employees is evident in the pleas of supporters of Committee Proposal No. 5., such as that made by Delegate Yamamoto:

> Therefore, I do urge you fellow delegates, let us give public employees a fair shake and not rate them as second-class citizens, they are by an large dedicated workers.
> 1 *Proceedings 1968* at 477.

12. To support their contention that the framers intended to give absolute discretion to the legislature in defining the terms of collective bargaining for public employees, Defendants rely heavily upon selected portions of committee reports. To give effect to the intention of the framers and the people adopting a constitutional provision, examination of debates, proceedings and committee reports is useful. However, "the debates, proceedings and committee reports do not have binding force on this court and their persuasive value depends upon the circumstances of each

"as provided by law" gave the legislature complete discretion to take away public employees' right to organize for the purpose of collective bargaining. Such reading is contrary to the underlying object and purpose of the constitutional provision.[12]

## IV. CONCLUSION

Based on the foregoing, we hold that Section 2 of Act 100, 1999 Haw. Sess. L., violates the rights of public employees under article XIII, section 2 of the Hawai'i Constitution.

The circuit court's judgment is hereby affirmed.

RAMIL and ACOBA, JJ.; and NAKAYAMA, J., concurring separately, with whom MOON, C.J., and LEVINSON, J., · join; and ACOBA, J., concurring separately.

Concurring Opinion by NAKAYAMA, J., In which MOON, C.J., and LEVINSON, J., join.

I agree with Justice Ramil's conclusion that Section 2 of Act 100, 1999 Haw. Sess. L. (Section 2), violates article XIII, section 2 of the Hawai'i Constitution, inasmuch as the legislature went beyond its constitutional authority in abrogating altogether the right of public employees to organize for the purpose

case." *Kahlbaun*, 64 Haw. at 204, 638 P.2d at 316. While there is some evidence in the convention reports to suggest deferral to legislation action, the portions relied upon by Defendants were focused on the issue of the right to strike and who should determine that question. For example, to support his position, Defendant Yogi cites to the committee report stating that:

> This amendment providing, "collective bargaining as prescribed by law," allayed the opposition and concern expressed by some members of your committee.... In the case of public employees the rights of collective bargaining will be restricted to those areas in such a manner as will be determined by the legislature.
> 1 *Proceedings 1968* at 207 (quoting Stand. Comm. Rep. No. 42). Defendant Yogi overlooked the sentence following the above quoted passage. That sentence read, "Therefore, the right to strike determination." By reading the two passages together, it becomes clear that the second passage qualified the meaning of first, so that deferral to legislative action is intended to be observed only on the issue of the right to strike.

of collective bargaining. I write separately to clarify the reason for this conclusion.

Article XIII, section 2 of the Hawai'i Constitution provides that "[p]ersons in public employment shall have the right to organize for the purpose of collective bargaining *as provided by law.*" Haw. Const. art. XIII, § 2 (emphasis added). Pursuant to this provision, the legislature is given broad discretion in setting the parameters for collective bargaining. Indeed, the legislature has constitutionally exercised such discretion on previous occasions. *See* Hawai'i Revised Statutes (HRS) § 89–6 (1993) (establishing bargaining units); HRS § 89–9(d) (1993) (specifying matters that are not subject to collective bargaining); HRS § 89–10(c) (1993) (determining the expiration date for collective bargaining agreements and proscribing the reopening of cost items during the term of the agreement).

While the legislature is given broad discretion pursuant to article XIII, section 2, the language "as provided by law" does not give the legislature unfettered discretion to infringe upon the core principles of collective bargaining.

> The fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it. This intent is to be found in the instrument itself. When the text of a constitutional provision is not ambiguous, the court, in construing it, is not at liberty to search for its meaning beyond the instrument.

*State v. Kahlbaun,* 64 Haw. 197, 201, 638 P.2d 309, 314 (1981) (citations omitted). In this case, the intent is found in the instrument itself. The language "as provided by law" in article XIII, section 2 does not provide the legislature with unfettered discretion to enact laws that completely abrogate the right of public employees to organize for the purpose of collective bargaining pursuant to article XIII, section 2. Interpreting this language in such a manner would produce an absurd result inconsistent with the intent of the framers. *See In re Application of Pioneer Mill Co.,* 53 Haw. 496, 500, 497 P.2d 549, 552 (1972) ("We are always reluctant to decide that the constitutional draftsmen intended to accomplish what appears to be an absurd result.").

Inasmuch as article XIII, section 2 does not grant the legislature unfettered discretion to infringe on the core principles of collective bargaining, the legislature went beyond its constitutional authority in enacting Section 2. Article XIII, section 2 expressly provides that "[p]ersons in public employment shall have the right to organize *for the purpose of collective bargaining* as provided by law." Haw. Const. art. XIII, § 2 (emphasis added). "Collective bargaining" is defined as

> the performance of the mutual obligations of the public employer and an exclusive representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to wages, hours, amounts of contributions by the State and counties to the Hawai'i public employees health fund, and other terms and conditions of employment, except that by any such obligation neither party shall be compelled to agree to a proposal, or be required to make a concession.

HRS § 89–2 (Supp.2001). Section 2 amended HRS § 89–9(a) by adding the following underscored language, thus prohibiting altogether negotiation over "cost items" for two years:

> The employer and the exclusive representative shall meet at reasonable times, including meetings in advance of the employer's budget-making process, and shall negotiate in good faith with respect to wages, hours, the number of incremental and longevity steps and movement between steps within the salary range, the amounts of contributions by the State and respective counties to the Hawai'i public employees health fund to the extent allowed in subsection (e), and other terms and conditions of employment which are subject to negotiations under this chapter and which are to be embodied in a written agreement, or any question arising thereunder, but such obligation does not compel either party to agree to a proposal or make a concession; <u>provided that the parties may not negotiate with respect to cost</u>

items as defined by section 89-2 for the biennium 1999 to 2001, and the cost items of employees in bargaining units under section 89-6 in effect on June 30, 1999, shall remain in effect until *July 1, 2001*.

HRS § 89-9(a) (Supp.2001) (emphasis added). "Cost items" are defined as "all items agreed to in the course of collective bargaining that an employer cannot absorb under its customary operating budgetary procedures and that require additional appropriations by its respective legislative body for implementation." HRS § 89-2. It is undisputed that wages and cost items are among the core subjects of collective bargaining. *See* HRS § 89-3 (Supp.2001) ("Employees shall have the right of self-organization . . . for the purpose of collectively bargaining . . . on questions of wages, hours, and other terms and conditions of employment. . . ."); HRS § 89-9(a) (quoted *supra*); *Ford Motor Co. v. NLRB,* 441 U.S. 488, 490–91, 99 S.Ct. 1842, 60 L.Ed.2d 420, n. 2 (1979) ("As originally enacted, the Wagner Act [of 1935] did not define the subjects of [the] obligation to bargain [imposed by § 8(a)(5) of the National Labor Relations Act], although § 9(a), which

was contained in the Wagner Act, made reference to 'rates of pay, wages, hours of employment, or other conditions of employment.' Section 8(d) was added by the Taft–Hartley amendments to the Act in 1947, and expressly defined the scope of the duty to bargain as including 'wages, hours, and other terms and conditions of employment.' "). Thus, by enacting Section 2, which completely prohibited negotiation of "cost items," the legislature was in fact abrogating the right of public employees to "organize for the purpose of collective bargaining." The legislature did not have the constitutional authority to enact a law that in effect completely abrogated the right granted under article XIII, section 2 of the Hawai'i Constitution. It is for the foregoing reasons that I concur with Justice Ramil's conclusion.