Order, Supreme Court, New York County (Jane S. Solomon, J.), entered October 22, 2007, which granted defendants’ motion to dismiss the complaint, unanimously modified, on the law, to declare that the instant controversy involving the Legislature’s internal practices is not justiciable under the doctrine of separation of powers, and otherwise affirmed, without costs.
Plaintiffs challenge certain rules and practices adopted by the Assembly and Senate with respect to government-subsidized printing, franking and Web site-hosting privileges afforded to members of those chambers, rules and practices that allegedly violate the First Amendment guarantee of free speech.
Plaintiff Urban Justice Center (UJC) lacks standing to bring this action. While it alleges vaguely that the prohibitions on communication contained in the Assembly and Senate rules as to what constitutes “official mail” for purposes of Legislative Law § 16 interfere with its ability and that of its clients to receive the communications necessary to enable them to measure the responsiveness and efficacy of their elected representatives while determining the best use of their limited advocacy resources, this is not an infringement unique and distinct to UJC and its clients. All citizens have the right to open access to their elected representatives, and are deprived of that right *568 when communications from their legislators are censored. UJC has failed to allege a personally concrete and demonstrable injury distinct from that suffered by the public at large (see Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]). For the same reason, UJC also lacks third-party standing to raise a First Amendment claim on behalf of its clients (see Matter of MFY Legal Servs. v Dudley, 67 NY2d 706, 708-709 [1986]). Because it has not alleged that the rules and practices at issue have caused it “injury by way of an added burden on [its] resources,” or that its need to litigate this action on behalf of its clients is such a “central concern of our society” as to justify giving it standing without otherwise meeting the requirement of showing injury-in-fact, there is no basis for conferring organizational standing upon UJC under Grant v Cuomo (130 AD2d 154, 159 [1987], affd 73 NY2d 820 [1988]).
While this action is now moot with respect to the individual plaintiffs, the circumstances now presented on appeal nonetheless satisfy the exception to the mootness doctrine in that the issues raised by the appeal are likely to recur. Given that the composition of the two legislative chambers has the potential to change every two years, it is highly possible that the claims of an individual member will evade review. Moreover, whether the Senate and Assembly rules as currently written and applied violate the free speech rights of members is a substantial question not yet addressed by this Court or the Court of Appeals (see Matter of Chenier v Richard W., 82 NY2d 830 [1993]; cf. Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713 [1980]).
Even though the action presents a live controversy as to the individual plaintiffs, we decline to address the merits of the appeal on separation of powers grounds (see Urban Justice Ctr. v Pataki, 38 AD3d 20 [2006], appeal dismissed and lv denied 8 NY3d 958 [2007]). “The doctrine of the separation of powers is grounded on the principle that each of the three branches of government, executive, legislative, and judicial, possesses ‘distinct and independent powers, designed to operate as a check upon those of the other two co-ordinate branches,’ and each ‘is confined to its own functions and can neither encroach upon nor be made subordinate to those of another’ ” (id. at 27, quoting Matter of Davies, 168 NY 89, 101-102 [1901]). Each branch “should be free from interference, in the discharge of its own functions and peculiar duties, by either of the others” (Matter of Gottlieb v Duryea, 38 AD2d 634, 635 [1971], affd 30 NY2d 807 [1972], cert denied 409 US 1008 [1972]). “It is not merely for convenience in the transaction of business that they are *569 kept separate by the Constitution, but for the preservation of liberty itself’ (People ex rel. Burby v Howland, 155 NY 270, 282 [1898]).
In short, “it is not the province of the courts to direct the legislature how to do its work” (People ex rel. Hatch v Reardon, 184 NY 431, 442 [1906], affd 204 US 152 [1907]), “particularly when the internal practices of the Legislature are involved” (Urban Justice Ctr., 38 AD3d at 27). However, in seeking both a declaration that the subject rules and practices are invalid and an order restraining their future application by the majority parties of the two chambers, plaintiffs are asking for that very relief. Although the specific statutory mandate at issue (Legislative Law § 16 [a]) provides that “[t]he secretary of the senate . . . and the clerk of the assembly . . . shall prepay the postage on all official mail deposited in the post office of the respective houses for transmission through the mails by members of the senate and assembly, respectively” (emphasis added), it is left to the discretion of the respective chambers of the Legislature to define what constitutes “official mail,” which each has done in the promulgation of the Senate and Assembly rules. As such, the matter is beyond judicial review (see Matter of Schulz v Silver, 212 AD2d 293, 295 [1995], lv denied 87 NY2d 916 [1996]). Furthermore, while there is arguably a competing constitutional mandate at issue prohibiting the abridgement of the right to free speech, this right is not infringed upon by the Senate and Assembly rules, as plaintiffs, as well as any other member of the Legislature, are free to use the mails at their own expense, even if they are unable to convey their message through the use of public funds (see e.g. Gottlieb, 38 AD2d at 635).
Were we to consider the merits of the appeal, we would conclude that the Senate and Assembly rules pass constitutional muster. The government may make content-based restrictions on speech when the speech is subsidized (Davenport v Washington Ed. Assn., 551 US 177, 188-189 [2007]), for the very reason that the government may eliminate the entire category of government-subsidized speech, i.e., it can choose to subsidize some speech and not other speech (Regan v Taxation With Representation of Wash., 461 US 540, 548-550 [1983]). As long as the restrictions are viewpoint-neutral and not aimed primarily at suppression of ideas, such regulation of subsidized speech does not offend the First Amendment.
There is no concrete allegation in the complaint that the franking rules and practices are applied in a discriminatory manner, or that the effect that defendants seek to achieve *570 through such rules and practices is to drive certain ideas or viewpoints from the marketplace. To the contrary, the challenged rules do not prevent members of the Legislature from using self-financed mailings or operating their own Web sites to express opinions on any subjects they wish, as both individual plaintiffs do. Moreover, as the state franking privilege represents a nonpublic forum for speech (cf. Perry Ed. Assn, v Perry Local Educators’ Assn., 460 US 37, 45-46 [1983]), the restrictions on speech presented by the rules need only be reasonable in light of the purpose served by the forum, and not an effort to suppress expression merely because public officials oppose the speaker’s view (see Good News Club v Milford Central School, 533 US 98, 106-107 [2001]; Rosenberger v Rector & Visitors of Univ. of Va., 515 US 819, 829 [1995]; International Soc. for Krishna Consciousness, Inc. v Lee, 505 US 672, 678-679 [1992]; Cornelius v NAACP Legal Defense & Ed. Fund, Inc., 473 US 788, 799-800 [1985]). The purpose of the franking privilege is to provide subsidized communication between legislators and their constituents with regard to the official business of the Legislature. Where the guidelines serve this purpose by prohibiting the use of certain content that might serve to disparage the Legislature as a whole or individual members, and most importantly, where the guidelines do not discriminate based on viewpoint but rather apply evenhandedly to all members of the Legislature regardless of party affiliation, the rational basis test is easily met. We modify because in an action for a declaratory judgment, where the disposition is on the merits, the court should make a declaration even though the plaintiff is not entitled to the relief sought (Hirsch v Lindor Realty Corp., 63 NY2d 878, 881 [1984]). Concur—Friedman, J.P., Moskowitz, Acosta and DeGrasse, JJ. [See 2007 NY Slip Op 33388(U).]