LAW LIBRARY



IN THE SUPREME COURT OF THE STATE OF HAWAI'I

--- o0o ---

HAWAII GOVERNMENT EMPLOYEES ASSOCIATION,
AFSCME LOCAL 152, AFL-CIO, Plaintiff-Appellee,

and

HAWAII STATE TEACHERS ASSOCIATION and UNITED PUBLIC WORKERS,
AFSCME, Local 646, ALF-CIO, Intervenors-Appellees,

vs.

LINDA LINGLE, as Governor of the State of Hawai'i; and DOES 1-10,
Defendant-Appellant.

NO. 29972

APPEAL FROM THE FIRST CIRCUIT COURT
(CIV. NO. 09-1-1375)

SEPTEMBER 8, 2010

2010 SEP -8 AM 9:48

FILED

NAKAYAMA, ACTING C.J., DUFFY AND RECKTENWALD, JJ.,
CIRCUIT JUDGE AHN IN PLACE OF MOON, C.J., RECUSED,
AND ACOBA, J., DISSENTING

OPINION OF THE COURT BY NAKAYAMA, J.

Defendant-Appellant, Linda Lingle ("Lingle"), as Governor of the State of Hawai'i, appeals from the Circuit Court of the First Circuit's[1] ("circuit court's") July 28, 2009 final judgment and findings of fact, conclusions of law, and order in favor of Plaintiff-Appellee, Hawaii Government Employees Association, AFSCME Local 152, AFL-CIO ("HGEA"). On appeal, Lingle presents the following points of error: (1) "the circuit

[1] The Honorable Karl K. Sakamoto presided.

court erred when it acted without jurisdiction and ruled on whether the furlough plan complied with Hawaiʻi Revised Statutes (HRS) § 89-9(d) [(Supp. 2008)[2]] and the unilateral change

---

[2] HRS § 89-9(d) provides:

> Excluded from the subjects of negotiations are matters of classification, reclassification, benefits of but not contributions to the Hawaii employer-union health benefits trust fund or a voluntary employees' beneficiary association trust; recruitment; examination; initial pricing; and retirement benefits except as provided in section 88-8(h). <u>The employer and the exclusive representative shall not agree to any proposal</u> that would be inconsistent with the merit principle or the principle of equal pay for equal work pursuant to section 76-1 or <u>that would interfere with the rights and obligations of a public employer to</u>:
>
> (1) Direct employees;
>
> (2) Determine qualifications, standards for work, and the nature and contents of examinations;
>
> (3) Hire, promote, transfer, assign, and retain employees in positions;
>
> (4) Suspend, demote, discharge, or take other disciplinary action against employees for proper cause;
>
> (5) <u>Relieve an employee from duties because of lack of work or other legitimate reason</u>;
>
> (6) Maintain efficiency and productivity, including maximizing the use of advanced technology, in government operations;
>
> (7) <u>Determine methods, means, and personnel by which the employer's operations are to be conducted; and</u>
>
> (8) <u>Take such actions as may be necessary to carry out the missions of the employer in cases of emergencies</u>.
>
> This subsection shall not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions as a permissive subject of bargaining during collective bargaining negotiations or negotiations over a memorandum of agreement, memorandum of understanding, or other supplemental agreement.
>
> Violations of the procedures and criteria so negotiated may be subject to the grievance procedure in the collective bargaining agreement.

continue...

doctrine"; (2) "[t]he circuit court erred when it concluded that [Lingle's] furlough plan was not a valid exercise of her management rights under HRS § 89-9(d) and violated the unilateral change doctrine"; (3) "[t]he circuit court erred when it incorrectly ruled, as a matter of law, that [Lingle's] furlough plan violated the constitutional right to bargain collectively in the public sector under [a]rticle XIII § 2 of the Hawaii constitution";[3] and (4) "[t]he circuit court erred in applying the test for injunctive relief" because "HGEA demonstrated no irreparable harm, and the public interest did not support granting the injunction, and the circuit court misread the . . . law." Based upon the following analysis, we vacate the circuit court's July 28, 2009 final judgment and findings of fact, conclusions of law and order, and remand this case for further proceedings consistent with this opinion. More specifically, we hold that the Hawai'i Labor Relations Board ("HLRB") had "exclusive original jurisdiction" over the statutory issues raised by HGEA, and that the circuit court should have deferred ruling on the constitutional issues until after the HLRB had the opportunity to resolve the statutory questions.

---

[2]...continue
(Emphases added.)

[3] Article XIII, section 2 of the Hawai'i constitution provides: "Persons in public employment shall have the right to organize for the purpose of collective bargaining as provided by law."

# I. BACKGROUND

## A. Executive Order 09-02

On June 24, 2009, Lingle issued executive order 09-02. Therein it was observed that "the widespread impact of the global financial crisis and constantly decreasing revenue projections by the [state] Council on Revenues . . . forced the State of Hawaii to make drastic and unprecedented revenue and expenditure adjustments to close a budget shortfall of approximately two billion dollars ($2,000,000,000) through the fiscal biennium 2009-2011[.]" (Brackets and ellipsis added.) It observed further that, "based on the May 28, 2009 projections by the [state] Council on Revenue, the State of Hawaii is . . . facing an additional deficit of seven hundred thirty million dollars ($730,000,000) through the fiscal biennium 2009-2011, resulting in an immediate fiscal emergency of unparalleled magnitude[.]"

In light of the current revenue estimates, executive order 09-02 ordered the furlough[4] of certain state executive branch employees for a total of seventy-two work days over the fiscal biennium 2009-2011,[5] which was to become effective on July 1, 2009, and subject to certain terms and conditions. Among these terms and conditions was the requirement that the affected state executive branch employees' pay would be "automatically

[4] Executive order number 09-02 defined a "furlough" as "the placement of an employee temporarily and involuntarily in a non-pay and non-duty status by the Employer because of lack of work or funds, or other non-disciplinary reasons."

[5] Executive order number 09-02 required that thirty-six furlough days were to be taken during each of fiscal years 2009-2010 and 2010-2011.

adjusted" by reducing the affected employee's pay between 13.8% and 15.8% each pay period to account for the furlough days.

Although executive order 09-02 was issued on June 24, 2009, on June 1, 2009, Lingle publicly announced her plan to, among other things, furlough certain state executive branch employees for "3 days/24 hours each month, from July 1, 2009 to June 30, 2011, thereby unilaterally reducing employees' hours and cutting employees' wages approximately 13.8%."

**B. Circuit Court Proceedings**

After Lingle's June 1, 2009 announcement, on June 16, 2009, HGEA filed a complaint in the circuit court that sought, among other things, a declaratory judgment that Lingle "cannot unilaterally impose the furloughs," and a preliminary and permanent injunction enjoining Lingle from "unilaterally imposing" the same. HGEA based its request for relief on article XIII, section 2 of the Hawaiʻi constitution and HRS Chapter 89.

In a first amended complaint filed on June 22, 2009, HGEA averred that Lingle "intends to unilaterally implement new procedures regarding layoffs after June 20, 2009 and impose mass state employee[] layoffs" "if her furlough plan is blocked by the courts." As such, HGEA also sought a declaratory judgment that Lingle cannot "unilaterally impose new layoff procedures," and a preliminary and permanent injunction enjoining Lingle from "unilaterally imposing" the same.

On June 23, 2009, HGEA filed a motion for preliminary injunction. Briefly summarized, in its memorandum in support of its motion, HGEA asserted that collective bargaining is a

constitutionally protected right and statutorily mandated. HGEA also asserted that furloughs are a "mandatory and core subject of collective bargaining" pursuant to HRS Chapter 89 and common law, and the common law "unilateral change" doctrine prevents Lingle from unilaterally imposing furloughs during the pendency of an arbitration process between it and the public employers.[6]

On June 29, 2009, Lingle filed her opposition to HGEA's motion for preliminary injunction. Among the arguments made, Lingle asserted that HGEA's assertions are "predominately prohibited practices complaints that fall under HLRB's 'exclusive primary jurisdiction.'" Lingle also asserted that (1) the "management rights" in HRS § 89-9(d) gives her authority to furlough "unionized workers" and these "rights" are not subject to collective bargaining, (2) the furlough order is consistent with article XIII, section 2 of the Hawaiʻi constitution, (3) the furlough order does not violate the unilateral change doctrine, (4) HGEA's complaints about layoff procedures are premature and within HLRB's jurisdiction even when ripe, (5) HGEA has not shown that they will suffer irreparable damage if the preliminary

---

[6] We note that the circuit court made the following findings that appear to be undisputed between the parties:

> 3. HGEA, as the exclusive collective bargaining representative for collective bargaining units 2, 3, 4, 9, and 13, entered into collective bargaining agreements with the public employers, including the State of Hawaii, for the period July 1, 2007 to June 30, 2009.
>
> 4. By Memorandum of Agreement, dated February 20, 2009, HGEA and the public employers, including the State of Hawaii, agreed to an impasse, negotiation, mediation, and interest arbitration procedure for reaching the successor collective bargaining agreements, effective July 1, 2009.

injunction is denied, and (6) the public interest requires denying the injunction.

On July 28, 2009, the circuit court filed its findings of fact, conclusions of law, and order that, among other things, granted in part HGEA's motion for preliminary injunction.[7] Therein, the circuit court made the following pertinent conclusions: (1) pursuant to United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Yogi, 101 Hawai'i 46, 62 P.3d 189 (2002) and Malahoff v. Saito, 111 Hawai'i 168, 140 P.3d 401 (2006), Lingle's unilateral decision to furlough certain unionized state executive branch employees "infringed on core subjects of collective bargaining [(namely, wages)], in violation of article XIII, section 2 of the Hawaii constitution[,]"; (2) pursuant to NLRB v. Katz, 369 U.S. 736 (1962), "certain terms and conditions of an expired agreement continue in effect by operation of law" and, inasmuch as the furloughs "change wages," the furloughs "cannot be imposed by unilateral action[,]"; (3) essentially, inasmuch as "the courts retain jurisdiction to consider constitutional claims[,]" Lingle's assertion that the HLRB has exclusive jurisdiction over this matter is unpersuasive; (4) United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hannemann, 106 Hawai'i 359, 105 P.3d 236 (2005) is inapposite; (5) Lingle's reliance on the "managerial rights" provisions in HRS § 89-9(d) "to justify unilateral imposition of the furlough program cannot be accepted because it would allow lawmakers absolute discretion to define

---

[7] The circuit court, "in the interests of judicial efficiency," also entered a permanent injunction in favor of HGEA and against Lingle.

the scope of collective bargaining, thereby defeating the intent of [a]rticle XIII, [s]ection 2[,]"; and (6) the issues of layoff procedures and criteria are not ripe for consideration at this time.

A final judgment was filed on June 28, 2009. On July 31, 2009, Lingle timely filed a notice of appeal.

On September 1, 2009, Lingle filed an application to transfer her appeal from the Intermediate Court of Appeals to this court. On September 22, 2009, this court granted Lingle's application for transfer.

## II. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

"Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo." Hawaii Mgmt. Alliance Ass'n v. Ins. Comm'r, 106 Hawaiʻi 21, 27, 100 P.3d 952, 957 (2004) (citation and internal quotation marks omitted).

### B. Statutory Interpretation

"Questions of statutory interpretation are questions of law reviewable de novo." Gump v. Wal-Mart Stores, Inc., 93 Hawaiʻi 417, 420, 5 P.3d 407, 410 (2000). In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole

> duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Awakuni v. Awana, 115 Hawaiʻi 126, 133, 165 P.3d 1027, 1034 (2007) (citation omitted).

**C. Constitutional Law**

"[T]his court reviews questions of constitutional law de novo, under the right/wrong standard." Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawaiʻi 159, 164-65, 172 P.3d 471, 476-77 (2007) (quoting Onaka v. Onaka, 112 Hawaiʻi 374, 378, 146 P.3d 89, 93 (2006)) (internal quotation marks omitted).

**III. DISCUSSION**

Lingle asserts that HRS § 89-14 (1993) gives the HLRB original jurisdiction over the statutory claims in this case, and the circuit court acted beyond its jurisdiction by ruling on questions intended exclusively for HLRB. HGEA asserts that the circuit court properly exercised jurisdiction in this case because HLRB's jurisdiction is limited to the extent that the courts, and not the HLRB, "can (1) decide constitutional

questions and (2) grant injunctive relief."[8]

HRS § 89-14 provides, in its entirety:

> Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9; provided that the board shall have exclusive original jurisdiction over such a controversy except that nothing herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section 89-12(e) or (2) the judicial review of decisions or orders of the board in prohibited practice controversies in accordance with section 377-9 and chapter 91. All references in section 377-9 to "labor organization" shall include employee organization.

Contrary to HGEA's assertions, pursuant to HRS § 89-14, original jurisdiction in this case properly resided with the HLRB and not the circuit court. In 1981, the Intermediate Court of Appeals ("ICA") filed a published opinion in Winslow v. State, 2 Haw. App. 50, 625 P.2d 1046 (1981). In Winslow, two of the issues addressed by the ICA were (1) "[w]hether grievance procedures established in the labor agreement to resolve disputes between the public employer and union members apply to an action against the union as well[,]" and (2) "[w]hether [the Hawaii

---

[8] We agree with the dissent that "the litigation between HGEA and [Lingle] is settled and the furlough controversy is moot." Dissent at 10. However, the instant case satisfies the public interest exception to the mootness doctrine. "[W]hen the question involved affects the public interest and an authoritative determination is desirable for the guidance of public officials, a case will not be considered moot." Doe v. Doe, 116 Hawaiʻi 323, 327, 172 P.3d 1067, 1071 (2007) (quoting Slupecki v. Admin. Dir. of the Courts, 110 Hawaiʻi 407, 409 n.4, 133 P.3d 1199, 1201 n.4 (2006)) (internal quotation marks omitted). Under this exception to the mootness doctrine, "we look to '(1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." Id. (citation omitted). We also agree with the dissent's analysis of these three factors, see dissent at 14 n.8, inasmuch as we conclude that the public interest exception to the mootness doctrine is satisfied by these reasons.

Public Employment Relations Board ('HPERB')[9]] has exclusive jurisdiction to hear complaints of unfair labor practices brought against a union by a union member[.]" Id. at 51-52, 625 P.2d at 1048-49.

With regard to the first issue, the ICA ultimately held that the "appellant could not be required to exhaust contractual remedies in an action against the union where no such remedies actually exist" because, "in the enactment of the contract's grievance procedures, it was not contemplated that the employee would utilize the procedures in a grievance against the union[] itself[.]" Id. at 56, 625 P.2d at 1051.

However, with regard to the second issue, the ICA pointed out that an employee in this situation "is not left remediless," and, in Hawai'i, "such an employee apparently has two options." Id. The first option recognized by the ICA in its opinion was the filing of a complaint in the HPERB. See id. However, the ICA stated that the HPERB's "jurisdiction in these matters . . . is not exclusive." Id. (ellipsis added). According to the ICA: "In the face of the allegations that the

---

[9] In 1985, the HPERB became the HLRB. See 1985 Haw. Sess. Laws Act 251, § 4 at 476.

union is guilty of prohibited practices,[] the statutes[[10]] permit such action to be brought before the [HPERB] or in a court of competent jurisdiction."[11] Id. (footnote added and omitted); see Santos v. State, Dept. of Transp., Kauai Div., 64 Haw. 648, 655 n.12, 646 P.2d 962, 967 n.12 (1982) (recognizing that Winslow held in part that "under HRS § 89-14 prohibited practices whether committed by the employer, employee, or employee organization can be taken before HPERB or in a court of competent jurisdiction"). As such, the second option recognized by the ICA was the filing of a complaint "in a court of competent jurisdiction." See Winslow, 2 Haw. App. at 56, 625 P.2d at 1051.

At the time Winslow was decided, HRS § 89-14 provided: "Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9. All references in section 377-9 to

---

[10] Apparently, the ICA was referring to the versions of HRS § 89-14 and HRS § 377-9 in effect at the time, see Winslow, 2 Haw. App. at 56-57, 625 P.2d at 1051-52, and are quoted infra.

[11] In other words, the ICA concluded:

> It seems clear . . . that under HRS § 89-14 prohibited practices whether committed by the employer, employee, or employee organization are to be treated in the same manner as unfair labor practices under HRS § 377-9. From a policy standpoint, it may have been preferable for appellant to pursue her relief from HPERB; however, nothing in the statute precludes this action from being brought in circuit court as well.

Winslow, 2 Haw. App. at 57, 625 P.2d at 1052 (ellipsis, emphasis, and brackets added).

'board' shall include the Hawaii public employment relations board and 'labor organization' shall include employee organization." 2 Haw. App. at 56-57, 625 P.2d at 1051 (quoting HRS § 89-14).[12]

However, in 1982, Hawaii's legislature amended HRS § 89-14 to "legislatively . . . overrule[]" Winslow because it disagreed with the ICA's interpretation of HRS § 89-14 and HRS § 377-9. A standing committee report was issued by the Committee on Public Employment and Government Operations that stated, in pertinent part, as follows:

> The purpose of this bill is to make the jurisdiction of the [HPERB] in controversies relating to prohibited practices exclusive except as otherwise provided in Chapter 89, [HRS].
>
> . . . .
>
> Recently, the [ICA], in [Winslow], construed sections 89-14 and 377-9, HRS, and concluded that the jurisdiction of the [HPERB] over controversies concerning prohibited (unfair labor) practices in the public sector is not exclusive, and that a prohibited practice complaint or action may be brought either before HPERB or in circuit court. In other words, the [ICA] concluded that under these two statutory sections, HPERB and the circuit courts have concurrent jurisdiction over prohibited practice complaints in the public sector.
>
> By making the jurisdiction of HPERB exclusive in controversies concerning prohibited practices, this bill legislatively rectifies or overrules the judicial conclusion or statutory construction enunciated in [Winslow].

H. Stand. Comm. Rep. No. 134-82, in 1982 House Journal, at 943 (emphases in original, brackets added).

---

[12] We note that, at the time Winslow was decided, HRS § 377-9(a) provided: "Any controversy concerning unfair labor practices may be submitted to the employment relations board in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction." 2 Haw. App. at 57, 625 P.2d at 1052 (quoting HRS § 377-9(a)).

A separate standing committee report was issued by the Committee on Judiciary, which stated:

> The purpose of this bill is to clarify that the [HPERB], rather than the courts, has primary jurisdiction over prohibited practice complaints filed under Chapter 89, Hawaii Revised Statutes.
>
> A recent Hawaii Court of Appeals decision interprets Section 89-14 and 377-9, Hawaii Revised Statutes, to give HPERB and the circuit courts concurrent jurisdiction over prohibited practice complaints. This bill will make it clear that HPERB has exclusive original jurisdiction over prohibited practice complaints. Appeals from HPERB will continue to be filed in Circuit Court.

H. Stand. Comm. Rep. No. 589-82, in 1982 House Journal, at 1164 (brackets added).

As further explained by the Committee on Human Resources:

> In 1970, the Legislature created the [HPERB] to administer the provisions of Chapter 89 in an effort to promote cooperative relations between the government and its employees and to protect the public by ensuring orderly government operations. Thus, the board was given jurisdiction of prohibited practice cases. Your Committee believes the original intent of this provision was to allow the board, who is the administrative agency with the expertise in public employment relations, to have primary jurisdiction of prohibited practice complaints. However, a recent Hawaii Court of Appeals decision interprets Section 89-14 and 377-9, Hawaii Revised Statutes, to give HPERB and the circuit court concurrent jurisdiction over prohibited practice complaints.
>
> This bill will make it clear that HPERB has exclusive original jurisdiction over prohibited practice complaints. Appeals from HPERB will continue to be filed in Circuit Court.

S. Stand. Comm. Rep. No. 597-82, in 1982 Senate Journal, at 1202 (brackets added).

As enacted, the pertinent portions of HRS § 89-14 were

amended to read as it does today.[13] See 1982 Haw. Sess. Laws Act 27, § 1 at 38.

In light of the foregoing, the legislature clearly intended for the HLRB to have exclusive original jurisdiction over prohibited practice complaints, and the ICA's contrary interpretation in Winslow was incorrect. See, e.g., H. Stand. Comm. Rep. No. 134-82, in 1982 House Journal, at 943. As it applies to this case, what constitutes a "prohibited practice" is set forth in HRS § 89-13(a) (Supp. 2003), as follows:

> It shall be a prohibited practice for a public employer or its designated representative wilfully to:
>
> . . . .
>
> (5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9;
>
> (6) Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
>
> (7) Refuse or fail to comply with any provision of this chapter;
>
> (8) Violate the terms of a collective bargaining agreement.

(Ellipsis added.)

Paragraphs 5 and 7 of HGEA's first amended complaint alleges:

> 5. The Governor cannot unilaterally impose furloughs and circumvent the collective bargaining process. Furloughs reduce employee hours and wages and affect terms and conditions of employment and, therefore, are a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution and

---

[13] We note that HRS § 89-14 was amended again in 1985 only to remove any language referring to the HPERB, inasmuch as the HPERB became the HLRB in that year. See 1985 Haw. Sess. Laws Act 251, § 6 at 479-80.

> as prescribed by HRS § 89-9(a). Any disputes over negotiable subjects, when properly presented, must be resolved in accordance with the impasse, mediation, and arbitration process prescribed by HRS § 89-11 and the Memorandum of Agreement, dated February 20, 2009, between HGEA and the Employer. The Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89-9(d).
>
> . . . .
>
> 7. Alternatively, even if furloughs are not a mandatory subject of collective bargaining negotiation, and they are, the *procedures* for implementing furloughs are subject to negotiation under Article XIII, Section 2 of the Hawaii State Constitution and HRS Chapter 89 and are also, if properly presented, subject to the above-described arbitration process.

(Italics in original, ellipsis added.)

In light of these and other allegations, HGEA asserted in its first amended complaint, as follows:

> COUNT I
>
> 8. HGEA requests, and is entitled to receive, a declaratory judgment that the Governor cannot unilaterally impose the furloughs.
>
> COUNT II
>
> 9. HGEA requests, and is entitled to receive in order to avoid irreparable harm, a preliminary and permanent injunction from this court enjoining the Governor from unilaterally imposing the furloughs.
>
> COUNT III
>
> . . . .
>
> 13. The Governor's unilateral action is a violation of the Hawaii Constitution, Article XIII, Section 2.
>
> COUNT IV
>
> . . . .
>
> 15. Layoff procedures are subject to negotiation under Article XIII, Section 2 of the Hawaii State Constitution and HRS Chapter 89 and are also, if properly presented, subject to the above-described arbitration process.
>
> . . . .
>
> 17. HGEA requests, and is entitled to receive, a declaratory judgment that the Governor cannot unilaterally impose new layoff procedures.
>
> 18. HGEA also requests, and is entitled to receive in order to avoid irreparable harm, a preliminary and permanent injunction from this court enjoining the Governor from unilaterally imposing new layoff procedures.

(Ellipses added.)

Viewing the assertions made by HGEA in its first amended complaint in light of HRS § 89-13(a), it appears that HGEA alleges that Lingle essentially engaged in a "prohibited practice" when she unilaterally imposed furloughs. See HRS § 89-13(a). For example, HRS § 89-13(a)(5) mandates that "[i]t shall be a prohibited practice for a public employer . . . willfully to . . . [r]efuse to bargain collectively in good faith with the exclusive representative as required in [HRS §] 89-9[,]" while paragraph 5 of HGEA's complaint alleges that "[t]he Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89-9(d)" thereby "circumvent[ing] the collective bargaining process" because "[f]urloughs reduce employee hours and wages and affect terms and conditions of employment and, therefore, are a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution and as prescribed by HRS § 89-9(a)." (Brackets added.) Pertinent statutes clearly provide that the HLRB has jurisdiction to "[r]esolve controversies under [HRS chapter 89.]" HRS § 89-5(i)(3) (Supp. 2005) (brackets added); see id. § 89-5(a) ("There is created a Hawaii labor relations board to ensure that collective bargaining is conducted in accordance with this chapter . . . ."); id. § 89-5(i)(4) ("In addition to the powers and functions provided in other sections of this chapter, the board shall . . . conduct proceedings on complaints of prohibited practices by employers . . . and take such actions with respect thereto as it deems necessary and proper[.]"); see also HRS § 89-1(b)(3) (Supp. 2005) ("The

legislature declares that it is the public policy of the State to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government. These policies are best effectuated by . . . [c]reating a labor relations board to administer the provisions of [HRS] chapters 89 and 377."). HRS § 89-14 provides that the HLRB "shall have exclusive original jurisdiction over" "[a]ny controversy concerning prohibited practices." Although HGEA's complaint does not expressly use the words "prohibited practice," a prohibited practice can be logically inferred therefrom because HGEA's complaint essentially alleges, among other things, that Lingle "[r]efuse[d] to bargain collectively in good faith with the exclusive representative as required in [HRS] section 89-9[,]", and HRS § 89-13(a)(5) mandates that it "<u>shall be a prohibited practice</u> for a public employer . . . [to] wil[l]fully . . . [r]efuse" to bargain collectively as such. (Emphasis added); <u>see</u> <u>Au v. Au</u>, 63 Haw. 210, 221, 626 P.2d 173, 181 (1981) ("Generally, pleadings should be construed liberally and not technically."); <u>see also</u> Hawai'i Rules of Civil Procedure (HRCP) Rule 8(a) (instructing that a "pleading which sets forth a claim for relief . . . shall contain" among other things "a short and plain statement of the claim showing that the pleader is entitled to relief"), 8(f) ("All pleadings shall be so construed as to do substantial

justice.").[14] As such, the HLRB has exclusive original jurisdiction over the statutory claims raised in HGEA's complaint. See HRS § 89-14; HRS § 89-13(a); see also, e.g., H. Stand. Comm. Rep. No. 134-82, in 1982 House Journal, at 943.

Nonetheless, HGEA asserts that the HLRB's jurisdiction is limited to the extent that a court, and not the HLRB, has jurisdiction to decide constitutional questions because HRS § 89-14 states that "nothing herein shall preclude the judicial review of decisions or orders of the [HLRB] in accordance with [HRS] section 377-9." In support of its assertion, HGEA then points to the following portion of HRS § 377-9(a) (1993): "Any controversy concerning unfair labor practices may be submitted to the board in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction."

However, HGEA overlooks that the language that it relies on in HRS § 89-14 refers to an appeal from, or "judicial review" of, a "decision[] or order[] of the [HLRB]." See HRS § 89-14. Indeed, HRS § 377-9(f) to (h) provides instruction in this regard.[15] The HLRB has obviously not filed a decision or

[14] Moreover, we point out that Intervenors-Appellees, Hawaii State Teachers Association and United Public Workers, AFSCME, Local 646, AFL-CIO (collectively, "Intervenors") "acknowledge[d]" in their answering brief "that the HLRB might have concluded that [Lingle's] Executive Order was a 'prohibited practice' because it violated the statutory duty to bargain in HRS Chapter 89." (Emphasis in original.)

[15] HRS § 377-9(f) to (h) provides:

> (f) Any person aggrieved by the decision or order of the board may obtain a review thereof as provided in chapter

continue...

order in this case. Accordingly, HGEA's assertion is unpersuasive because the language that it relies on in HRS § 89-14 does not refer to original jurisdiction.

HGEA also points out that, (1) in Yogi, this court "addressed whether a legislative statute involving Chapter 89 violated a constitutional provision and the Yogi court did not decide that the constitutional issue was within the exclusive jurisdiction of the HLRB," and (2) the HLRB "itself has held that it lacks jurisdiction to decide constitutional questions." However, the issue in Yogi was whether a legislative amendment to

---

[15]...continue

91 by instituting proceedings in the circuit court of the judicial circuit in which the person or any party resides or transacts business, subject, however, to the general provisions of law for a change of the place of trial or the calling in of another judge. Where different parties in the same proceeding file petitions for review in two or more courts having proper jurisdiction, the jurisdiction of the judge first petitioned shall be exclusive and the other persons shall be transferred to the judge. The petition shall state the grounds upon which a review is sought and copies thereof shall be served upon the other parties and the board. Service may be made by mailing such copies to the last known post office address of the parties concerned. When the proceedings are at issue, they may be brought on for hearing before the court upon the record by any party on ten days' written notice to the others. Upon the hearing, the court may confirm, modify, or set aside the decision or order of the board and enter an appropriate decree. No objection that has not been urged before the board shall be considered by the court unless the failure or neglect to urge the objection shall be excused because of extraordinary circumstances.

(g) In any proceedings for review of a decision or order of the board, the judge shall disregard any irregularity or error unless it is made to appear affirmatively that the complaining party was prejudiced thereby.

(h) Commencement of proceedings under subsection (f) of this section shall not stay enforcement of the board decisions or order; but the board, or the reviewing court may order a stay upon such terms as it deems proper.

HRS § 89-9(a) violated the plaintiffs' constitutional right to organize for the purpose of collective bargaining. See 101 Hawai'i at 47, 62 P.3d at 190. As such, the issue presented in Yogi differs from the issue presented here inasmuch as Yogi did not address whether a public employer's action either violates or satisfies a statute that defines the scope of negotiations. See HRS § 89-9. On the one hand, HGEA asserted in its first amended complaint that, inter alia, "[f]urloughs reduce employee hours and wages and affect terms and conditions of employment and, therefore, are a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution and as prescribed by HRS § 89-9(a)." (Emphasis added.) On the other hand, Lingle asserted in her opposition to HGEA's motion for preliminary injunction that, inter alia, certain "management rights" in HRS § 89-9(d) gives her authority to order the furlough of "unionized workers" without regard to collective bargaining. In light of these arguments, the statutory issue here is quite unlike the issue presented in Yogi where a legislative amendment to HRS § 89-9(a) was held to have violated the rights of public employees under article XIII, section 2 of the Hawai'i Constitution. See 101 Hawai'i at 54, 62 P.3d at 197. More specifically, unlike Lingle's reliance on HRS § 89-9(d) in this case, the issue presented in Yogi was whether the phrase "as provided by law" in article XIII, § 2 of the Hawai'i Constitution "grant[ed] the legislature unfettered discretion to infringe on the core principles of collective bargaining." Id. at 55, 62 P.3d at 198 (Nakayama, J.,

concurring). Moreover, original jurisdiction was not at issue in Yogi. Therefore, Yogi is inapposite because Yogi did not address (1) the jurisdiction issue that is presented in this case, and (2) whether a public employer's action either violates or satisfies HRS § 89-9(a) or (d), respectively.

With regard to HGEA's second point, we read HGEA's first amended complaint as raising the following two pertinent issues: (1) whether Lingle's furlough constitutes "a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution[,]" and (2) whether the furlough constitutes "a mandatory subject of collective bargaining negotiation . . . as prescribed by HRS § 89-9(a)." Although it appears that the HLRB lacks jurisdiction to consider the constitutional issue, pertinent statutes reveal that the HLRB has jurisdiction to "[r]esolve controversies under [HRS chapter 89.]" HRS § 89-5(i)(3); see id. § 89-5(a); id. § 89-5(i)(4); see also HRS § 89-1(b)(3). As such, a constitutional analysis is unnecessary for the HLRB to adjudicate the statutory issues that are presented in HGEA's first amended complaint. Instead, the HLRB's analysis may be guided by rules of statutory construction[16] or any other rule it may deem to be appropriate.

---

[16] We point out that this court follows certain well-established rules of statutory construction that are in addition to those rules quoted supra in section II.B. Namely, it is well-established that,

> [w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language of the statute itself. And we must read statutory language in the context of the entire statute and construe

continue...

For this reason, HGEA's assertion is unpersuasive.[17]

In other words, if the HLRB determined that the furlough plan constituted a valid exercise of Lingle's management rights under HRS § 89-9(d), then the circuit court would have jurisdiction to determine whether the exercise of such a statutory management right violates article XIII, section 2. However, if the HLRB reached the contrary conclusion and determined that Lingle's actions were not authorized under HRS Chapter 89, then the circuit court would not need to reach the constitutional issue.

Thus, the circuit court erred by reaching the constitutional issue without first giving the HLRB the

---

[16]...continue

> it in a manner consistent with its purpose.

Coon v. City & County of Honolulu, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (citation omitted) (emphasis added). Moreover, "the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." Gray v. Adm'r Dir. of the Court, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (citation and internal quotation marks omitted). "[A] rational, sensible and practicable interpretation of [a statute] is preferred to one which is unreasonable or impracticable[.]" Keliipuleole v. Wilson, 85 Hawai'i 217, 221-22, 941 P.2d 300, 304-05 (1997) (brackets added and in original) (citation and internal quotation marks omitted).

> It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute.

Camara v. Agsalud, 67 Haw. 212, 215-16, 685 P.2d 794, 797 (1984).

[17] However, we point out that, although not presented, there may be certain circumstances where the circuit court may decide interim relief. For example, the circuit court can provide temporary relief in cases involving alleged prohibited practices upon application by the HLRB. See infra note 20 and discussion on page 27.

opportunity to address the issues arising under HRS Chapter 89. As we noted in City & County of Honolulu v. Sherman, 110 Hawai'i 39, 56 n.7, 129 P.3d 542, 559 n.7 (2006), "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (Citation omitted.) Moreover, requiring that statutory issues be submitted to the HLRB furthers the legislative policy, reflected in HRS § 89-14's grant of "exclusive original jurisdiction," of having the administrative agency with expertise in these matters decide them in the first instance. Stated differently, that legislative purpose is frustrated if the HLRB's jurisdiction can be defeated by characterizing issues that fall within the scope of HRS Chapter 89 as constitutional claims and then addressing them directly to the circuit court.

Similar to HGEA's assertions, Intervenors assert that the HLRB's jurisdiction "is limited to resolving claims of prohibited practices under the labor relations statutes, not constitutional violations, so the HLRB could not have decided the constitutional claim." In support of their assertion, Intervenors rely on HRS § 89-14 by reading the statute in the following way: "HLRB has jurisdiction over controversies 'concerning prohibited practices . . . as provided in [HRS] section 377-9[.]'" (Brackets added.) Intervenors then rely on the following language in HRS § 377-9: "Any controversy concerning unfair labor practices may be submitted to the board . . . ."

Through their reading of these statutes, Intervenors apparently suggest that because alleged constitutional violations are not included among the "prohibited practices . . . as provided in [HRS] section 377-9," jurisdiction over the constitutional issue properly resided in the circuit court. Such was the reasoning and conclusion of the circuit court in this case.[18]

However, we cannot say that HRS § 89-14's reference to HRS § 377-9 indicates any intent to distinguish between either different types of prohibited practices, or a prohibited practice on the one hand and constitutional violations on the other hand. Instead, our reading of HRS § 89-14 indicates that its reference to HRS § 377-9 is made to merely point to a statute that illustrates in what "manner" and "effect" a "controversy

---

[18] In detail, the circuit court concluded that the instant case was

> properly before the [c]ourt for issuance of injunctive and declaratory relief, because the issue is whether [Lingle's] June 1, 2009 decision, and implementation of that decision through Executive Order 09-02 (June 24, 2009), are a violation of Article XIII, Section 2 of the Hawaii State Constitution, just as the issue in <u>Yogi</u> was whether a statute violated Article XIII, Section 2 of the Hawaii State Constitution.

(Emphasis in original, brackets added.) As such, the circuit court "reject[ed] [Lingle's] contention that this case must be presented to the [HLRB]" because "[t]he jurisdiction of the [HLRB] is limited." (Brackets added.) According to the court's interpretation of HRS § 89-14, "'the board shall have exclusive original jurisdiction' only over '[a] controversy concerning <u>prohibited practices</u> . . . as provided in section 377-9.' Section 377-9, HRS, provides, in turn, that '[a]ny controversy <u>involving unfair labor practices</u> may be submitted to the board.' None of the prohibited practices in Chapter 377 include <u>constitutional</u> violations." (Emphases, brackets, and ellipsis in original.) The circuit court also pointed out that "HRS § 89-13 addresses various prohibited practices that the HLRB is required to render factual findings concerning whether or not a prohibited practice occurred."

concerning prohibited practices may be submitted to the [HLRB.]" See HRS § 89-14. Indeed, the portion of HRS § 89-14 that Intervenors are referring to provides, in its entirety: "Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9 . . . ." (Emphasis added.)

Among HRS § 377-9's subsections that illustrate in what "manner" and "effect" a "controversy concerning prohibited practices may be submitted to the [HLRB]" is HRS § 377-9(b), which provides in part that "[a]ny party in interest may file with the board a written complaint, on a form provided by the board, charging any person with having engaged in any specific unfair labor practice." Therefore, Intervenors' assertion is unpersuasive because HRS § 89-14's reference to HRS § 377-9 does not make the alleged distinction, and instead merely points to a statute that illustrates in what "manner" and "effect" a "controversy concerning prohibited practices may be submitted to the [HLRB] . . . ."

HGEA also asserts that jurisdiction properly resided in the circuit court in this case because the courts, and not the HLRB, "may grant the preliminary injunctive relief sought by HGEA." According to HGEA, "[Lingle's] oral announcement of furloughs on June 1, 2009, and written executive order on June 24, 2009, to be implemented by July 1, 2010 [sic], provided only a short time frame to act, thereby creating exigent

circumstances."[19]

However, HGEA does not cite to any authority that supports its position that, essentially, "exigent circumstances" justified the circuit court in proceeding directly to the constitutional issues without first allowing the HLRB to rule on the statutory questions. Instead, HGEA admits that "HRS § 380-14(b) provides that the [HLRB] shall have the power to petition any circuit court for appropriate temporary relief or restraining order[.]"[20] (Brackets added.) Accordingly, viewing HRS § 380-14(b) in light of HRS § 89-14, we remain mindful that "[p]rudential rules of judicial self-governance properly limit the role of the courts in a democratic society[,]" and one such rule is that, "even in the absence of constitutional restrictions, [courts] must still weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, <u>especially where there may be an intrusion into areas committed to other branches of government</u>." <u>In re Attorney's Fees of Mohr</u>, 97 Hawai'i 1, 9-10, 32 P.3d 647, 655-56 (2001) (emphasis in

---

[19] We note that Intervenors assert a similar position as HGEA.

[20] HRS § 380-14(b) (1993) provides:

> The board shall have power, upon the filing of a complaint as provided in section 377-9 to petition any circuit court of the State within any circuit wherein the unfair labor practice in question is alleged to have occurred or wherein the person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon the person, and thereupon shall have jurisdiction to grant to the board such temporary relief or restraining order as it deems just and proper.

original, brackets added and in original, internal quotation marks and citation omitted); see Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., 76 Hawai'i 454, 467, 879 P.2d 1037, 1050 (1994) (Klein, J., concurring and dissenting) ("[T]he Court's function in the application and interpretation of . . . laws must be carefully limited to avoid encroaching on the power of [the legislature] to determine policies and make laws to carry them out." (Quoting Boys Mkts., Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 256-57 (1970).) (Internal quotation marks omitted, brackets in original and added, and ellipsis added.)). The record in this case does not establish that recourse to the procedure set forth in HRS § 380-14(b) would be either futile or impractical, and it would be unwise for us to bring about a policy that effectively circumscribes HLRB's exclusive original jurisdiction over "[a]ny controversy concerning prohibited practices[,]" as mandated by the legislature in HRS § 89-14. As such, HGEA's assertion is unpersuasive on the present record.

In light of the foregoing, we hold that the HLRB had exclusive original jurisdiction over the statutory issues raised in HGEA's complaint, and the circuit court erred in addressing the constitutional issues without first giving the HLRB the opportunity to address the statutory questions.[21] See HRS § 89-14; HRS § 89-13(a); Sherman, 110 Hawai'i at 56 n.7, 129 P.3d at 559 n.7; Garcia, 90 Hawai'i at 440-41, 978 P.2d at 878-79; see also, e.g., H. Stand. Comm. Rep. No. 134-82, in 1982 House

[21] In light of the foregoing disposition, resolution of Lingle's remaining points of error is unnecessary.

Journal, at 943. However, we point out that, once the HLRB reaches a decision on the issues presented, that decision is subject to appeal, or "judicial review," "in accordance with [HRS] section 377-9 and [HRS] chapter 91." HRS § 89-14(2) (brackets added).

**IV. CONCLUSION**

Based upon the foregoing analysis, we vacate the circuit court's July 28, 2009 final judgment and findings of fact, conclusions of law, and order, and remand this case for further proceedings consistent with this opinion.[22]

Mark J. Bennett, Attorney General, (Lisa M. Ginoza, First Deputy Attorney General and Deirdre Marie-Iha, Deputy Solicitor General with him on the briefs) for Defendant-Appellant Linda Lingle, as Governor of the State of Hawai'i

Charles A. Price (James E.T. Koshiba with him on the brief) of Koshiba Agena & Kubota for Plaintiff-Appellee Hawaii Government Employees Association, AFSCME Local 152, AFL-CIO

---

[22] Whether upon remand the circuit court should either dismiss or stay this case pending the outcome of any proceedings before the HLRB has not been argued on appeal. As such, we decline to express any opinion on this issue.

Herbert R. Takahashi (Rebecca L. Covert, Danny J. Vasconcellos and Rebecca L. Covert with him on the brief) of Takahashi Vasconcellos & Covert and Scott A. Kronland of Altshuler Berzon LLP, *pro hac vice*, for Intervenor-Appellee Hawaii State Teachers Association and United Public Workers, AFSCME, Local 646, AFL-CIO